# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
**12 PERCENT LOGISTICS, INC., et al.,** )
)
    **Plaintiffs,** )
)
    **v.** )    Case No. 17-cv-02000 (APM)
)
**UNIFIED CARRIER REGISTRATION** )
**PLAN BOARD, et al.** )
)
    **Defendants.** )
_____ )

## MEMORANDUM OPINION

On September 14, 2017, Defendant Unified Carrier Registration Plan Board ("Board") held a meeting in which it decided to postpone the start of the annual registration period for motor carriers, brokers, and freight forwarders from October 1, 2017, to November 1, 2017. The Board adopted the 30-day postponement to give the Secretary of Transportation more time to act on a rate reduction proposal that the Board had submitted to the Secretary six months earlier. The manner in which the Board noticed the September 14th meeting did not comply with federal law. Under the Sunshine Act, 5 U.S.C. § 552b, the Board was required to publicly announce meeting information. Although the Board notified prior Board-meeting attendees of the September 14th meeting, it failed to publish information regarding the meeting's time, location, and subject matter in the Federal Register, as required by the Sunshine Act. Following the Board's action, Defendant Indiana Department of Revenue, which administers the website on which entities register, complied with the Board's 30-day postponement and delayed the start of the fee and registration collection period.

Plaintiffs 12 Percent Logistics, Inc., and the Small Business in Transportation Coalition, a registrant and trade group representing registrants, respectively, filed suit against the Board and the Indiana Department of Revenue and its Commissioner, Adam J. Krupp, in his official capacity. They allege that they did not receive notice of the September 14th meeting and claim the 30-day postponement of the registration date harms them. Now before the court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, in which Plaintiffs ask this court to enter an injunction that (1) reverses the Board's postponement of the registration date and compels the Board and the two state defendants (collectively "INDOR") to immediately begin accepting registrations and fees payments, and (2) prevents the Board from future Sunshine Act violations.

The court concludes that Plaintiffs are not entitled to the drastic relief they seek. Although Plaintiffs have demonstrated that they are likely to prove that the Board violated the Sunshine Act when it failed to give proper notice of the September 14th meeting, the Sunshine Act does not authorize the court to invalidate the Board's decision to postpone the registration date. The court also finds that enjoining the Board from violating the Sunshine Act in the future is unwarranted when Plaintiffs have identified only one prior violation. Instead, the appropriate remedy for the Board's violation is to compel the Board to make public records memorializing what transpired at the non-conforming meeting. The court, therefore, orders the Board to immediately disclose all draft minutes, transcripts, and recordings of the September 14th meeting.

Accordingly, Plaintiffs' Motion is granted in part and denied in part.

## I. BACKGROUND

The Unified Carrier Registration ("UCR") program is a federally created system for registering and collecting fees from motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies, whose commercial vehicles travel in interstate commerce. *See*

49 U.S.C. § 14504a. The UCR program is overseen and implemented by a 15-member board of directors ("the Board") appointed by the Secretary of Transportation. *See id*. § 14504a(d)(1). The Board's primary function is to implement the "UCR Agreement," an interstate agreement that governs the collection and distribution of fees paid by motor carriers and other covered entities, and registration and financial responsibility information. *See id*. § 14504a(a)(8), (d)(2). Those businesses register with the UCR and pay fees annually, and that revenue is routed back to the states that have opted into the registration system. *Id*. § 14504a(f)(4), (h). Forty-one states participate in the UCR Agreement, but the District of Columbia does not appear to be one of them. *See* Def.'s Opp'n, ECF No. 25, Ex. 1, ECF No. 25-1 [hereinafter Jefferson Decl.], ¶ 3; *see* UNIFIED CARRIER REGISTRATION SYS., *IN GOV UCR Application*, https://www.ucr.in.gov/ucrHome.html (last visited Oct. 17, 2017) (identifying the District of Columbia as a "non-participating" state).

The rates charged to UCR registrants are set by the Secretary of Transportation based on the Board's recommendations. 49 U.S.C. § 14504a(d)(7). Whenever the Board proposes a change to the annual rates, the Secretary is statutorily required to provide notice and an opportunity for public comment and to act on the Board's recommendation within 90 days. *Id*. § 14504a(d)(7). The UCR Plan pays Defendant INDOR to operate the program's registration website for the states that have opted into the system. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 8–9; Compl., Attach. 1, ECF No. 1-1 [hereinafter Pls.' Exs.], at 37–43, 44–55 (Exs. 3 & 4).

At a meeting held on March 14, 2017, the Board voted to recommend that the Secretary change the rates to be charged in 2018 and 2019. Compl. ¶ 25. The proposed rates were lower than those charged in recent years—a move the Board said at oral argument was prompted by the concern that the current fee structure, if continued, would cause the Board to exceed the amount of money it is lawfully permitted to hold. *See* 49 U.S.C. § 14504a(h)(3), (4); Hr'g Tr. (draft), Oct.

12, 2017, at 39. The new rate proposal, however, stalled in the hands of the Secretary, who took no formal action within the statutorily mandated 90-day period after the Board's recommendation. Compl. ¶¶ 26, 30.

To give the Secretary more time to act, the Board convened a meeting on September 14, 2017, and voted to delay the start of the annual UCR registration period by 30 days. Compl. ¶ 27. The Board neither publicly announced nor submitted for publication in the Federal Register any information about the September 14th meeting, but did send an e-mail to past Board-meeting attendees. Jefferson Decl. ¶ 9. The Board's decision shifted the start of registration for the coming calendar year from October 1, as called for by the UCR Agreement, to November 1. Pls.' Exs. at 13[1] (Ex. 2). But because the Board did not push back the December 31, 2017, end-date for registration, the action compressed the registration period from three months to two months. Compl. ¶ 29. The Board directed Defendant INDOR, which accepts registrations and collects fees on the Board's behalf through a state-run website, to postpone the opening date for registration. *Id*. ¶¶ 8, 33; Jefferson Decl. ¶ 10. The Indiana Department of Revenue complied. Compl. ¶ 32–33, 70.

Upset by the Board's Sunshine Act violation and its decision to postpone the start of registration, Plaintiffs filed a four-count Complaint on September 27, 2017. Count I alleges that the Board violated the Sunshine Act when it failed to properly notice the September 14th meeting. *See* Compl. ¶¶ 37–45. Count II alleges that the Board violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by holding the inadequately noticed meeting. Compl. ¶¶ 46–51. In Count III, the Plaintiffs assert that the Board's decision to delay the registration period was arbitrary and capricious, which also violated the APA. *Id*. ¶¶ 52–63. Lastly, Count IV alleges that

---

[1] The pin cite here is to the electronic page number generated by the ECF docketing system.

INDOR acted "unlawfully" by postponing UCR registration until November 1 because it was obligated to begin accepting renewals and fees on October 1, under the terms of the UCR Agreement. *Id*. ¶¶ 64–71. (As discussed below, Plaintiffs subsequently abandoned Counts II and III, and now proceed only as to Counts I and IV.)

Plaintiffs simultaneously moved for a temporary restraining order and preliminary injunction against the Board. They ask the court to reverse the Board's decision to postpone the registration period, enjoin the Board from future violations of the Sunshine Act, and order INDOR to accept UCR registrations and fee payments on October 1. *See* Pls.' Mot. for TRO & Prelim. Inj., ECF No. 2 [hereinafter Pls.' Mot.].

The Board opposed Plaintiffs' motion.[2] In their reply brief, Plaintiffs abandoned their APA claims, conceding that that the Board is not an "agency" subject to the requirements of the APA.[3] Pls.' Reply, ECF No. 29, at 10–11. After Plaintiffs' Motion was fully briefed, the court heard oral argument on October 12, 2017.

## III. DISCUSSION

### A. Plaintiffs' Claim against the Board

Ordinarily, when faced with a request for preliminary injunctive relief of the kind sought in Count I, the court would evaluate that demand using the familiar four-part equitable standard set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The court does not strictly follow that traditional course here, however, because both the Sunshine Act itself and binding precedent circumscribe the types of equitable relief available for a violation of the Act, as well as the circumstances under which a court may grant such relief. Thus, the court first considers

---

[2] INDOR filed a notice of appearance but entered a "Notice of No Response" on Plaintiffs' Motion. ECF No. 26.

[3] The court expresses no view on the accuracy of Plaintiffs' position.

5

whether Plaintiffs have demonstrated a substantial likelihood of success in showing a Sunshine Act violation before turning to what, if any, equitable relief is appropriate for such a violation.

        1.     *Whether Plaintiffs Have Demonstrated a Likelihood of Success on Their Sunshine Act Claim*

The Board is required to follow particular steps to notify the public when it plans to hold a meeting during which members might determine or dispose of official agency business. The Sunshine Act requires that, at least one week before holding a "meeting," an agency "make [a] public announcement . . . of the time, place, and subject matter of the meeting, whether it is to be open or closed to the public, and the name and phone number of the official designated by the agency to respond to requests for information about the meeting." 5 U.S.C. § 552b(e)(1). The Act further requires that, "[i]mmediately following each public announcement," the agency must submit the same information contained in the public announcement for publication in the Federal Register. *Id.* § 552b(e)(3). The Sunshine Act, therefore, commands federal agencies to provide the public with notice of both the meeting's logistics and anticipated subject matter. This obligation extends to the Board. 49 U.S.C. § 14504a(d)(4)(D).

There is no real dispute that the Board failed to conform to the Act's meeting notice requirements. The Board's declarant, Daphne Jefferson, a member of the Board, explains that, although a notice to announce the meeting had been drafted, "the notice was not published in the Federal Register prior to the meeting due to unanticipated delays in the review and approval process within [the Department of Transportation]." Jefferson Decl. ¶ 9. The Board did not, however, completely disregard its notice obligations. In lieu of a formal public notice and publication in the Federal Register, the Board sent an e-mail to previous meeting participants that (1) notified them of the meeting's date and time; (2) provided them an access code to participate in the meeting, which was to be held telephonically; and (3) attached as a separate document an

6

agenda for the meeting. *See id.* Although it is possible that the Board's e-mail satisfied the Act's "public announcement" requirement, *see* 5 U.S.C. § 552b(e)(1) (lacking a definition of "public announcement"), there is no question that the Board violated the Sunshine Act when it failed to submit the required meeting information for publication in the Federal Register, *see id.* § 552b(e)(3). Therefore, Plaintiffs have established that they are likely to succeed on the merits of their Sunshine Act claim.

2. *What Equitable Relief is Appropriate for Plaintiffs' Sunshine Act Claim*

Turning then to the remedies available for a Sunshine Act violation, the Act itself provides the starting point.[4] The Sunshine Act contains two subsections that address the availability and propriety of remedies. Those subsections state in relevant part:

> (1) The district courts of the United States shall have jurisdiction to enforce the requirements of subsections (b) through (f) of this section by declaratory judgment, injunctive relief, or other relief as may be appropriate. . . . In such actions a defendant shall serve his answer within thirty days after the service of the complaint. The burden is on the defendant to sustain his action. . . . The court, having due regard for orderly administration and the public interest, as well as the interests of the parties, may grant such equitable relief as it deems appropriate, including granting an injunction against future violations of this section or ordering the agency to make available to the public such portion of the transcript, recording, or minutes of a meeting [unless otherwise authorized to be withheld under the Act].
>
> (2) Any Federal court otherwise authorized by law to review agency action may, at the application of any person properly participating in the proceeding pursuant to other applicable law, inquire into violations by the agency of the requirements of this section and

---

[4] The court harbors some doubt as to whether the Board is subject to the Sunshine Act's remedial provisions. The Sunshine Act itself applies only to "agencies," as that term is defined in the APA. *See* 5 U.S.C. § 552b(a)(1). Plaintiffs have conceded, however, that the Board is not an "agency" for purposes of the APA. Nevertheless, Plaintiffs maintain that the Sunshine Act's remedial provisions apply because the "[m]eetings of the [B]oard" are subject to the requirements of the Sunshine Act. *See* 49 U.S.C. § 14504a(d)(4)(D). The fact that the Board's "meetings" must comply with the Sunshine Act, though, does not necessarily mean that the Board is an "agency" subject to the Act's remedies. Again, those remedial provisions are applicable only against "agencies," and the Board is not an "agency" according to Plaintiffs. In any event, the Board has not challenged the applicability of the Sunshine Act's remedial provisions to it, so the court assumes their application here.

7

> afford such relief as it deems appropriate. Nothing in this section authorizes any Federal court having jurisdiction solely on the basis of paragraph (1) to set aside, enjoin, or invalidate any agency action (other than an action to close a meeting or to withhold information under this section) taken or discussed at any agency meeting out of which the violation of this section arose.

5 U.S.C. §§ 552b(h)(1), (2). Taken together, subsections (h)(1) and (h)(2) define the circumstances and scope of appropriate equitable relief available for a violation of the Sunshine Act. For cases arising under subsection (h)(1), the appropriate relief for a violation of the Sunshine Act is to compel the agency to release information that would inform the public about what transpired at the non-conforming meeting. This is gleaned from the text of subsection (h)(1), which expressly authorizes a court to order this type of equitable relief, and the limitations on remedies contained in subsection (h)(2). If a federal court's jurisdiction to review the agency's compliance with the Sunshine Act arises only under subsection (h)(1), then the federal court lacks the power to invalidate the agency action taken at the non-conforming meeting. *Id*. § 552b(h)(2). On the other hand, a court whose jurisdiction arises under subsection (h)(2) possesses broader authority to award "such equitable relief as it deems appropriate." *Id*. That might include vacating an agency action taken at a non-conforming meeting because, unlike as with subsection (h)(1), the statute does not expressly forbid a court from vacating an agency action taken at a non-conforming meeting. But the D.C. Circuit has cautioned that such drastic relief is the exception rather than the rule. In *Pan American World Airways, Inc. v. Civil Aeronautics Board*, the Circuit, interpreting the court's authority under subsection (h)(2), observed that the Sunshine Act "strongly indicates a congressional policy that release of transcripts, not invalidation of the agency's substantive action, shall be the normal remedy for Sunshine Act violations." 684 F.2d 31, 36 & n.10 (D.C. Cir. 1982). The more sweeping remedy of invalidating the agency action, the Circuit explained, is reserved for violations of a "serious nature" that are intentional and "prejudicial to the rights of any person

8

participating in the review proceeding." *Id.* at 36. Thus, although the Sunshine Act commands that agencies abide by its transparency measures, it grants courts the power to strike agency action because of violations only in rare cases.

Applying the foregoing legal principles here, the court concludes that it cannot grant the injunctive relief Plaintiffs seek for two primary reasons. First, the court concludes that it *only* has jurisdiction under subsection (h)(1). No one disputes that this court has jurisdiction to hear Plaintiffs' Sunshine Act claim under subsection (h)(1); instead, the fight is over whether the court *also* possesses jurisdiction under subsection (h)(2), because that is the remedial provision that would allow this court to vacate the Board's postponement of the registration period. Although Plaintiffs urge the court to find it has jurisdiction under subsection (h)(2), they have not identified any "law" that "otherwise authorize[s]" the court to review the Board's failure to provide adequate public notice of the September 14th meeting and, then, provide the requested relief. 5 U.S.C. § 552b(h)(2); *cf. Pan Am. World Airways*, 684 F.2d at 36 n.10 (noting that the court's jurisdiction arose not under the Sunshine Act, but under then-in-effect 49 U.S.C. § 1486(a), thus allowing the court to review the agency's action under subsection (h)(2)). Indeed, Plaintiffs expressly disclaimed that the Administrative Procedure Act applies to the Board, *see* Pls.' Reply, at 10–11, and have identified no other federal statute that otherwise authorizes the court to review the Board's non-compliance with the Sunshine Act or any of its other actions. This failure to identify a federal law that authorizes review is fatal to Plaintiffs' request for the undoing of the Board's vote. Additionally, although the statute limits remedial relief under subsection (h)(2) to persons who "properly participat[ed] in the proceeding pursuant to other applicable law," neither Plaintiff claims to have participated in the September 14th meeting. This, too, is fatal. At oral argument, Plaintiffs argued that reading subsection (h)(2)'s "participation" requirement to mean that only

9

actual participants to a non-conforming proceeding could seek relief under that subsection would be absurd, because it would mean, for instance, that persons who had no knowledge of a meeting due to a failure to provide public notice would be disqualified from seeking relief under subsection (h)(2). *See* Hr'g Tr. (draft), Oct. 12, 2017, at 7. Consequently, Plaintiffs assert that the "participation" requirement in subsection (h)(2) must be read to reach any party aggrieved by a violation of the Sunshine Act. Plaintiffs may be right that reading "participation" to mean actual participation might lead to some unfair results, but the court cannot ignore the plain text and structure of the statute. Subsection (h)(1) broadly permits "any person" to seek relief against the agency, but subsection (h)(2) is far narrower, allowing only those "properly participating in the proceeding pursuant to other applicable law" to seek relief under that subsection. Adopting Plaintiffs' reading of subsection (h)(2) would erase that clear textual distinction, a result that the court cannot accept. Thus, finding that neither Plaintiff participated in the September 14th meeting, Plaintiffs' Sunshine Act claim cannot arise under subsection (h)(2), and the court is powerless to grant Plaintiffs' requested relief.

Second, even if Plaintiffs have shown eligibility for relief under subsection (h)(2), they have not demonstrated the kind of "serious" violation of the Sunshine Act that would warrant invalidating the Board's action. The Board concedes that its efforts to publicize the meeting fell short of the Sunshine Act's requirements. Yet, the Board cannot be said to have thumbed its nose at the spirit of the Sunshine Act. The Board did provide notice of the meeting, including its subject matter, by e-mail to those who had previously attended Board meetings. Was that e-mail a substitute for the Sunshine Act's requirements? Of course not. But the e-mail, while deficient under the statute, tells the court that the Board appreciated its Sunshine Act obligations—indeed, Plaintiffs have cited no other instance of a Sunshine Act violation—and attempted to mitigate its

10

non-compliance by communicating information about the meeting to the people most likely to have an interest in attending—those who attended Board meetings in the past. This is not the kind of "serious" violation of the Sunshine Act that warrants invalidating an agency action. *Cf. Pan Am. World Airways*, 684 F.2d at 36–37 (finding that the unlawful closure to the public of an emergency meeting constituted a "serious" violation). Moreover, Plaintiffs have not shown how their rights were prejudiced by the Board's Sunshine Act violation. The inadequate notice arguably denied Plaintiffs the opportunity to participate in the meeting, but Plaintiffs have not offered any reason to believe that, had the Board issued a meeting notice that complied with the Sunshine Act, Plaintiffs would have attended the meeting and, in turn, the Board likely would not have postponed the registration date by 30 days. Absent a showing of prejudice other than missing the meeting itself, Plaintiffs are not entitled to the drastic remedy of striking the Board's action. *See Pan Am. World Airways*, 684 F.2d at 36–37. Accordingly, this is not one of the rare cases in which a Sunshine Act violation would warrant nullifying an agency action.

In light of the foregoing, the court looks to subsection (h)(1) for guidance on the appropriate relief in this matter. Under subsection (h)(1), the appropriate remedy for the Board's violation of the Sunshine Act is to compel the Board to release to the public any draft minutes, transcripts or recordings of the September 14th meeting. *See* 5 U.S.C. § 552b(h)(1); *Pan Am. World Airways*, 684 F.2d at 36–37. According to the Board's declarant, Daphne Jefferson, draft minutes of the September 14th meeting have been prepared and circulated to the Board for approval during its October meeting, which is set for October 26, 2017. The Board shall immediately make those draft minutes publicly available, as well as any transcripts or recordings of the September 14th meeting. The court, however, declines to enjoin the Board from committing any future violations of the Sunshine Act. Plaintiffs have cited only a single violation of the Act by the Board, and that

11

violation is hardly egregious. In short, Plaintiffs offer no basis for this court to believe that the Board is likely to engage in future violations of the Act that would justify prospective injunctive relief.

### B. Plaintiffs' Claim against the Indiana Department of Revenue

That leaves Plaintiffs' requested relief against Defendants INDOR. Plaintiffs contend that, by following in the footsteps of the Board and "unlawfully" delaying the start of the annual registration period, INDOR violated the UCR Agreement and caused them irreparable harm. Compl. ¶¶ 70–71; Pls.' Mem. at 14–15. They ask the court to order INDOR to immediately begin accepting UCR registrations and fees. *See* Compl., Attach. 1, ECF No. 1, at 37–43, 44–55 (Exs. 3 & 4). Thus, just as they did against the Board, Plaintiffs ask the court to issue an injunction against INDOR. The court declines to do so.[5]

Plaintiffs' claim against INDOR requires an analysis under the familiar, equitable standard for injunctive relief. Preliminary injunctive relief is an "extraordinary and drastic remedy" that is granted only when warranted, and "never . . . as [a matter] of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotations omitted). Only when a plaintiff makes a clear showing that it is entitled to relief may the court grant this extraordinary remedy. *Winter*, 555 U.S. at 22. This requires the plaintiff to show four things: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public's interest. *Id.* at 20; *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). The first inquiry, concerning the success on the merits, includes demonstrating a likelihood on the success of establishing

---

[5] INDOR has yet to offer an opposition to Plaintiff's Motion and, for that reason, Plaintiffs ask the court to treat their Motion as conceded as to INDOR and grant the requested relief. The court declines to do so because, as explained below, Plaintiffs have not shown a likelihood of success on the threshold question of personal jurisdiction.

jurisdiction. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913–14 (D.C. Cir. 2015). Plaintiffs' case founders at the first and third inquiries—their likelihood of success on the merits and showing irreparable harm.

1. *Whether Plaintiffs Have Demonstrated a Likelihood of Success on the Merits*

Plaintiffs have not established a "substantial likelihood" that this court has personal jurisdiction over INDOR, and thus, a likelihood of success on the merits. The court's exercise of personal jurisdiction over a nonresident defendant turns on the District of Columbia long-arm statute, the constitutional requirements of due process, and the defendant's own actions. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). As relevant here, the long-arm statute permits District of Columbia courts to exercise specific jurisdiction over a person who is "transacting any business in the District of Columbia" and whose contacts with the District of Columbia give rise to the claim at hand. D.C. Code § 13-423(a)(1), (b); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002).[6] A plaintiff who satisfies the long-arm statute also must show that exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause. *See GTE New Media Servs.*, 199 F.3d at 1347. That is, the plaintiff must show that the defendant has such contacts with the forum that it should reasonably anticipate by haled into court there. *Id.* For cases, like this one, where jurisdiction is asserted under the "transacting business" prong of the long-arm statute, the statutory and constitutional inquiries collapse into one, as that prong "generally has been interpreted to be coextensive with the Constitution's due process requirements." *Id.*

Plaintiffs contend that there is a substantial likelihood that this court has personal jurisdiction over INDOR because the state "transacts business" in this jurisdiction. For support,

---

[6] Plaintiffs do not contend that the court can exercise "general jurisdiction" over INDOR. *Cf.* Pls.' Resp. to the Court's Order to Show Cause, ECF No. 11, at 3.

13

they point to the fact that INDOR operates an online portal, accessible within the District of Columbia, for local motor carriers and others to register and make payments. *See* Pls.' Resp. to the Court's Order to Show Cause, ECF No. 11, at 3. Plaintiffs supplement their allegations of INDOR's contacts with the District of Columbia with a document titled "UCR 2017 State Percentages," which purports to show 150 "compliant" "USDC" registrants and 127 "noncompliant" "USDC" entities. *See id.* (citing Pls.' Mot., Ex. 9, ECF No. 2-2, at 3).[7]

Such meager evidence, at this point, does not convince the court that Plaintiffs are likely to succeed in establishing personal jurisdiction over INDOR. Whether a website provides sufficient contacts for a court to exercise jurisdiction often turns on whether the website is "passive," such as the mere communicator of information, or "interactive," such as allowing for some back-and-forth with the user. *See GTE New Media Servs.*, 199 F.3d at 134 (holding that specific jurisdiction "surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants"); *Triple Up Ltd. v. Youku Tudou, Inc.*, 235 F. Supp. 3d 15, 23–24 (D.D.C. 2017) (collecting cases); *cf. FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008) (holding that a court may exercise general jurisdiction over a defendant due to its website if the website is "interactive" and District residents use the website in a "continuous and systematic" way) (internal citation omitted).

Plaintiffs' assertion that INDOR's website gives this court personal jurisdiction over INDOR falls short for two reasons. First, the court does not have sufficient evidence before it to definitely conclude that District of Columbia residents use the INDOR website. Plaintiffs' only support for evidence of District residents' use of the website is the "UCR 2017 State Percentages"

---

[7] The pin cite here is to the electronic page number generated by the ECF docketing system.

document, but that document merely suggests that some District residents have registered under the UCR Plan and others have not. It does not clearly establish any website activity by District residents. Moreover, while Plaintiffs insist that District of Columbia residents in fact register and pay fees through the INDOR website, the INDOR website itself identifies the District of Columbia as a "non-participating state" in the UCR system. *See IN GOV UCR Application*, UNIFIED CARRIER REGISTRATION SYS., https://www.ucr.in.gov/ucrHome.html (last visited Oct. 17, 2017) (identifying the District of Columbia as a "non-participating" state); *UCR Participating State Contact List*, UNIFIED CARRIER REGISTRATION SYS., https://www.ucr.in.gov/MCS/StateContactList.pdf (last visited Oct. 17, 2017) (excluding any contact for a District of Columbia representative from the "UCR Participating State Contact List"). Thus, based on the paucity of evidence before it, the court is unconvinced that District residents even use the INDOR website. Second, even if District residents do use the website, the INDOR website appears to be a largely "passive" website. Based on the court's review, the website appears to be largely informational, containing links to registration instructions, forms, and information about the UCR system. The website does contain links that call for user names and passwords, but it is unclear what purpose those web pages serve. *See, e.g.*, *IN GOV UCR Application*, UNIFIED CARRIER REGISTRATION SYS., https://www.ucr.in.gov/ucrHome.html ("UCR Depository" tab) (last visited Oct. 17, 2017). Admittedly, the website is "interactive" in the sense that it accepts registrations and fee payments, but that is where the site's interactivity seems to end. There does not appear to be, for example, any real-time customer assistance available through the site. Such limited "interactivity" arguably does not give INDOR sufficient contacts with the District of Columbia to constitute "transacting business" here. *See Triple Up Ltd.*, 235 F. Supp. 3d at 28. Thus, having failed to show at this

stage that Plaintiffs are substantially likely to establish personal jurisdiction over INDOR, the court cannot grant the injunctive relief that Plaintiffs seek against INDOR for that reason alone.[8]

2. *Whether Plaintiffs Have Demonstrated Irreparable Harm*

Additionally, Plaintiffs' request for injunctive relief is unwarranted because they have failed to demonstrate irreparable harm. To show irreparable harm, a plaintiff must demonstrate injury that is "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (emphasis and internal quotation marks omitted). In their memorandum and at oral argument, Plaintiffs offered a variety of reasons why INDOR's action has or will cause them irreparable harm, namely that the postponement (1) prevents Plaintiffs from being able to register before November 1, 2017; (2) exposes Plaintiffs to the risk of enforcement action if they fail to register within the compressed time frame; and (3) delays the disbursement of fees to participating States for use in road safety programs, *see* 49 U.S.C. § 14504a(e)(1)(B), which in turn will degrade roads and driving conditions for registrants.

The harms to which Plaintiffs point are inadequate to establish the requisite irreparable harm because they are both speculative and insubstantial. First, Plaintiffs have not clarified how the forced delay in their UCR registration is anything more than a mere inconvenience. *Cf.* Hr'g Tr. (draft), Oct. 12, 2017, at 19–23. After all, Plaintiffs still will be able to register, just not at their preferred time. Second, the claim that would-be registrants might fail to register during the months

---

[8] In briefing submitted after oral argument, Plaintiffs argued that the court has subject matter jurisdiction to enforce the UCR Agreement because it is an interstate compact and therefore constitutes federal law. *See* Notice of Supp. Auth., ECF No. 30. Presumably, Plaintiffs make that argument to convince the court that it has subject matter jurisdiction as to the claim against INDOR, notwithstanding its sovereign immunity. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (stating that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes"). Because the court concludes it lacks personal jurisdiction over INDOR, the court expresses no opinion on the question of subject matter jurisdiction.

16

of November and December, and will then face penalties for their omission, is purely conjectural. The theoretical possibility of some future enforcement activity is not the kind of imminent harm that warrants injunctive relief. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (moving party must show injury complained of is imminent). Finally, Plaintiffs' assertion that the 30-day postponement will delay distribution of fees to states and thereby expose registrants to danger on the roadways is not supported by any evidence, only Plaintiffs' speculation. Plaintiffs provide no basis to believe that the abbreviated registration period will cause a delay in the disbursement of funds to states, let alone that such a delay will cause an imminent risk of harm on the nation's roadways. In short, except for the inconvenience of having to wait 30 days to register, Plaintiffs have not established any harm arising from INDOR's actions, let alone irreparable harm.

## V. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiffs' request for injunctive relief as to Count I. The Board shall immediately publish any draft minutes, transcripts, or recordings of the September 14th meeting on its website, or if it does not have a website, on the Department of Transportation's website. The Board also shall endeavor to publish such materials on the Indiana Department of Revenue's website, https://www.ucr.in.gov/ucrHome.html. Finally, at the Board meeting on October 26, 2017, the Board shall inform the public that such materials are publicly available and where they may be found. Plaintiffs' request for injunctive relief against INDOR is denied.

A separate Order accompanies this Memorandum Opinion.

Dated: October 18, 2017

Amit P. Mehta
United States District Judge