UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
12 PERCENT LOGISTICS, INC., et al.,         )
                                            )
          Plaintiffs,                       )
                                            )
     v.                                     )     Case No. 17-cv-02000 (APM)
                                            )
UNIFIED CARRIER REGISTRATION                )
PLAN BOARD, et al.,                         )
                                            )
          Defendants.                       )
_____)

# MEMORANDUM OPINION AND ORDER

For the second time in as many months, Plaintiffs 12 Percent Logistics, Inc., and the Small Business in Transportation Coalition seek a temporary restraining order and a preliminary injunction that would compel Defendants Unified Carrier Registration Plan Board ("UCR Board"), and the Indiana Department of Revenue and its Commissioner, Adam Krupp (collectively, "INDOR"), to allow motor carriers, brokers, and freight forwarders to register under the Unified Carrier Registration program for the 2018 calendar year. Plaintiffs also seek, once again, to enjoin the UCR Board from future violations of the Sunshine Act.

Plaintiffs' current motion differs from their initial one in a few respects. In the first round, Plaintiffs alleged that the UCR Board had violated the Sunshine Act by failing to give adequate notice of the UCR Board's September 14, 2017, meeting at which the Board decided to postpone the ordinary start of the registration period—October 1, 2017—and requested that the court undo the Board's decision because of that violation. *See 12 Percent Logistics, Inc. v. Unified Registration Plan Bd.*, No. 17-cv-02000, 2017 WL 4736709 (D.D.C. Oct. 18, 2017), at *1. The court denied Plaintiffs' motion on the ground that the Sunshine Act did not allow the court to grant

Plaintiffs the relief requested against the UCR Board and that, as to INDOR, Plaintiffs had not established they were likely to succeed in establishing the court's ability to exercise personal jurisdiction as to it. *See id*. at *6–7. The court also found that Plaintiffs had failed to demonstrate irreparable harm. *See id*. at *8. In addition, the court denied Plaintiffs' tandem request to enjoin the Board from future Sunshine Act violations, reasoning that such an order was not warranted in light of the sole statutory violation Plaintiffs had identified—the UCR Board's failure to give notice, publicly and in the Federal Register, of the September meeting. *Id*. at *5. The court, however, as a more limited remedy, ordered the UCR Board to disclose immediately its draft minutes and any recordings of the unnoticed meeting. *Id*.

In this second round, Plaintiffs offer a new legal theory on which to reverse the Board's postponement of the registration period. Plaintiffs now contend that the Unified Carrier Registration Act of 2005, 49 U.S.C. § 14504a, which created the UCR Board, grants Plaintiff an implied private right of action to enforce the terms of the Unified Carrier Registration Agreement ("UCR Agreement"), which is the interstate compact that the UCR Board implements. According to Plaintiffs, the Unified Carrier Registration Act allows them to bring suit to compel the UCR Board to open up the presently closed renewal period, which under the UCR Agreement was to have commenced on October 1, 2017. That avenue of redress, Plaintiffs contend, likewise extends to INDOR, which acts as the UCR Board's agent with respect to receiving registrations and collecting fees.

Additionally, Plaintiffs allege a slew of new Sunshine Act violations by the UCR Board, over its 11-year lifespan. Based on these collected violations, Plaintiffs renew their request for the court to enjoin the UCR Board from future violations of the Sunshine Act.

2

I

Preliminary injunctive relief, of the kind requested here, is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotation marks omitted). A court may only grant the "extraordinary remedy . . . upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Specifically, a plaintiff must show that: (1) it "is likely to succeed on the merits"; (2) it "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

Courts in this Circuit traditionally have evaluated these four factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). *Winter,* however, called that approach into doubt and sparked disagreement over whether the "sliding scale" framework continues to apply, or whether a movant must make a positive showing on all four factors without discounting the importance of a factor simply because one or more other factors have been convincingly established. *Compare Davis v. Billington,* 76 F. Supp. 3d 59, 63 n.5 (D.D.C. 2014) ("[B]ecause it remains the law of this Circuit, the Court must employ the sliding-scale analysis here."), *with ABA, Inc. v. Dist. of Columbia,* 40 F. Supp. 3d 153, 165 (D.D.C. 2014) ("The D.C. Circuit has interpreted *Winter* to require a positive showing on all four preliminary injunction factors." (citing *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d at 1296 (Kavanaugh, J., concurring))).

Regardless of whether the sliding scale framework applies, it remains clear that a movant must demonstrate irreparable harm, which has "always" been "[t]he basis of injunctive relief in the federal courts." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)); *see also Younger v. Harris*, 401 U.S. 37, 46 (1971) (noting that irreparable injury is "the traditional prerequisite to obtaining an injunction"). "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Indeed, if a court concludes that a movant has not demonstrated irreparable harm, it need not even consider the remaining factors. *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

A number of principles apply when evaluating whether an alleged harm is "irreparable." First, "the injury must be both certain and great; it must be actual and not theoretical." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). The party seeking relief must show that the complained-of injury is of such imminence that there is a clear and present need for equitable relief. *Id*. Second, the movant must "substantiate the claim that irreparable injury is 'likely' to occur." *Id*. (citation omitted). That means a party cannot rely on bare allegations of harm, but instead must come forward with "proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id*. Third, the moving party must establish causation. That is, it "must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Id*.

II

The court finds that injunctive relief is not warranted as to either of Plaintiffs' claims because Plaintiff has failed to show irreparable harm. For that reason, the court need not consider

4

any of the other factors. *See CityFed Fin. Corp.*, 58 F.3d at 747; *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 48 (D.D.C. 2010).

A.

With regard to its claim under the Unified Carrier Registration Act, 49 U.S.C. § 14504a, Plaintiffs have proffered harm that is, at best, theoretical. Plaintiffs maintain that, absent injunctive relief, starting in 2018, carriers nationwide face the prospect of state-imposed criminal or civil penalties for failing to possess a valid and current registration. Pls.' Second Mot. for Prelim. Inj., ECF No. 36, Pls.' Mem. in Support, ECF No. 36-1 [hereinafter Pls.' Mem.], at 14–15; Pls.' Resp., ECF No. 41, at 6. Plaintiffs, however, cite no case for the proposition that the mere possibility of some future enforcement action, particularly for a violation that has yet to occur, can constitute irreparable harm. Indeed, the weight of the law is to the contrary. *See generally Jarkesy v. SEC*, 803 F.3d 9, 25–27 (D.C. Cir. 2015); *see also John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 203 (D.D.C. 2017) (holding that "neither potential investigation by the [agency] nor the bringing of an enforcement action present irreparable injuries that the Court is willing to enjoin"). As the Supreme Court observed in *FTC v. Standard Oil Co.*: "The expense and annoyance of litigation is part of the social burden of living under government," and although the prospect of having to defend oneself in an adjudicatory proceeding is undoubtedly burdensome, it does not rise to the level of irreparable harm. 449 U.S. 232, 244 (1980) (citation and internal quotation marks omitted). Plaintiff's asserted harm therefore is insufficient as a matter of law.

Furthermore, as a practical matter, the court is skeptical that states will crack down on vehicle operators who, starting on January 1, 2018, do not have current registrations. After all, 41 states participate in the UCR Agreement and surely are aware of the UCR Board's decision to postpone the start of the registration period. Indeed, the Board voted to recommend that states not

enforce registration requirements until 90 days after the 2018 the registration period commences. First Am. Verified Compl., ECF No. 35 [hereinafter Am. Compl.], ¶ 38. Plaintiffs have offered no reason to believe that those 41 states, or any other, will hold a vehicle operator accountable for a stale registration when the UCR Board's actions have prevented operators from timely registering. And, even if a state or locality were to ignore the Board's action, it is hard to fathom that a state or local court would not find the unavailability of the registration system to be a complete defense to any enforcement action. Of course, an operator who finds itself having to defend against such an enforcement action will face a "substantial" burden, but not one sufficient to constitute irreparable injury. *Standard Oil*, 449 U.S. at 244. In short, Plaintiffs' claimed injury—that registrants will be held to account under state laws as of January 1, 2018, if they are unable to register immediately—amounts to "something merely feared as liable to occur at some indefinite time," for which injunctive relief is not appropriate. *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).[1]

B.

Plaintiffs fare no better in their effort to show irreparable harm with respect to their claim under the Sunshine Act. Plaintiffs assert that the UCR Board repeatedly has violated the Sunshine Act in three ways: (1) by failing to make a proper public announcement before each board meeting; (2) by failing to publish timely notice of board meetings in the Federal Register; and (3) by using the same boilerplate text to describe the subject matter of board meetings in its Federal Register

---

[1] As they did in the first round, Plaintiffs also assert irreparable harm in the form of diminished safety on the roadways arising from the non-distribution of registration fees to states because participating states are obligated to use those fees for road safety initiatives. *See* Pls.' Mem. at 15. But as before, that claimed injury is "not supported by any evidence, only Plaintiffs' speculation." *12 Percent Logistics, Inc. v. Unified Registration Plan Bd.*, 2017 WL 4736709, at *8.

notices. *See* Am. Compl. ¶¶ 52–56; *see* 5 U.S.C. §§ 552b(e)(1), (3). None of these alleged violations, however, warrants the injunctive relief Plaintiffs seek.

As to the claimed violation of the public announcement requirement, Plaintiffs—to their credit—brought to the court's attention a new website, www.ucrplan.org, which gives notice of the UCR Board's upcoming meetings and makes available the minutes of prior Board meetings. At the hearing on this matter, Plaintiffs acknowledged that the meeting notices posted to the new website satisfy the Sunshine Act's public notice requirement. Hr'g Tr. (draft), 11/30/17, at 3–5. Consequently, any prospect of harm flowing from a violation of that requirement is now extinguished.

The same is true with respect to the failure to timely publish notices in the Federal Register. The Sunshine Act requires the Federal Register notice to contain the same information as the public announcement. *Compare* 5 U.S.C. § 552b(e)(1), *with id.* § 552b(e)(3). Because the new website provides the same information as will appear in the Federal Register notice, Plaintiffs cannot possibly show that the lack of a timely publication in the Federal Register will cause them irreparable harm.

Finally, although the court is troubled by the Board's repeated use of the same text to describe the subject matter of upcoming meetings, Plaintiffs have not substantiated their claim of irreparable injury with "proof that the harm has occurred in the past . . . or proof indicating that the harm is certain to occur in the near future." *Wisconsin Gas*, 758 F.2d at 674. Indeed, the only evidence that Plaintiffs have presented—the First Amended Verified Complaint and the Second Declaration of Kevin Rea, ECF No. 35-1—is silent as to any past harm Plaintiffs have suffered as a result of the boilerplate text or any future harm that they are likely to suffer in advance of upcoming meetings if the Board continues to use boilerplate text. Plaintiffs contend that the

purpose of the subject matter disclosure—advising the public about the UCR Board's upcoming activities, thereby facilitating informed decisions about whether to attend or participate in meetings—is contravened by the Board's use of boilerplate in its notices. Pls.' Mem. at 14; Hr'g Tr. (draft), 11/30/17, at 10. Maybe so. But that claim of injury is simply a "[b]are allegation[ ] of what is likely to occur," which is of no value "since the court must decide whether the harm will *in fact* occur." *Wisconsin Gas*, 758 F.2d at 674. Absent "proof" of past or likely future harm arising from the lack of information about the subject matter of meetings, the court cannot find that *these Plaintiffs* will suffer irreparable harm from the UCR Board's general failure to carry out the purposes of the Sunshine Act.

Accordingly, having failed to demonstrate that they will suffer irreparable harm in the absence of injunctive relief, the court denies Plaintiffs' motion.

III

Before concluding, the court addresses an argument that Plaintiffs advance only as to INDOR. INDOR has now twice declined to oppose Plaintiffs' motions for injunctive relief. *See* Notice of No Response, ECF No. 26; Notice of No Response, ECF No. 39. Plaintiffs therefore ask the court to treat their motion as conceded as to INDOR and enter the requested injunction against it, even if the court declines to do so against the UCR Board. *See* Pls.' Reply, ECF No. 42, 1–2. Such an injunction would force INDOR, an agent of the UCR Board, to immediately open up registration through its website. *Id*. at 2–3.

Plaintiffs are right that, under this District Court's Local Civil Rules, if a non-movant fails to file a timely opposition to a motion, "the Court *may* treat the motion as conceded." LCvR 7(b) (emphasis added). The key word in that rule of course is "may," which gives the court discretion whether to treat an unopposed motion as conceded. Here, the court declines to do so. Treating

Plaintiffs' motion as conceded and granting injunctive relief as to INDOR would be tantamount to doing an end-run around the UCR Board, which has consistently opposed Plaintiffs' efforts to secure injunctive relief. The court will not allow one defendant's non-response to be used to the detriment of a responsive party.

IV

For the foregoing reasons, the court denies Plaintiffs' Second Motion for Temporary Restraining Order and Preliminary Injunction.

Dated: December 1, 2017

Amit P. Mehta
United States District Judge