# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| 12 PERCENT LOGISTICS, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 17-cv-02000 (APM) |
| UNIFIED CARRIER REGISTRATION PLAN BOARD, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs 12 Percent Logistics, Inc., and the Small Business in Transportation Coalition are back once more seeking an injunction against Defendant Unified Carrier Registration Plan Board ("UCR Plan Board"). This time Plaintiffs ask for an order "enjoin[ing] the UCR Plan Board to comply with the Sunshine Act and properly notice all future UCR Plan Board meetings and subcommittee meetings," pending Plaintiffs' appeal from the court's denial of their second and third requests for injunctive relief.[1] Pls.' Second Mot. for Inj. Pending Appeal, ECF No. 53 [hereinafter Pls.' Second Mot.]. The court denied Plaintiffs' earlier motions because Plaintiffs had failed to carry their burden of proving irreparable harm. Their present request, however, stands on

---

[1] In Plaintiffs' second and third motions for injunctive relief, Plaintiffs also sought to compel the opening of the annual UCR registration period, reasoning that the postponement of the registration period was a violation of the UCR Agreement. *See* Pls.' Mot. for Second TRO & Prelim. Inj., ECF No. 36, Mem. in Support, ECF No, 36-1, at 2; Pls.' Mot. for Third TRO & Prelim. Inj., ECF No. 46, Mem. in Support, ECF No. 46-1, at 1. The court declined to do so on the ground that Plaintiffs had not shown irreparable harm. *See 12 Percent Logistics, Inc. v. Unified Registration Plan Bd.*, No. 17-cv-02000, 2017 WL 5990123, at *3 (D.D.C. Dec. 1, 2017). The UCR Board has since opened the registration period. *See* Pls.' Reply in Support of Mot. for Inj. Pending Appeal, ECF No. 59, at 2. Although the opening of the registration period moots Plaintiffs' call for injunctive relief, Plaintiffs maintain they intend to litigate, at the summary judgment stage, their claim that the late-opening of the registration period violated the UCR Agreement. *Id.*

different footing. The Unified Carrier Registration Act expressly makes "[m]eetings of the board *and* any subcommittees or task forces" "subject to the provisions" of the Sunshine Act. *See* 49 U.S.C. § 14504a(d)(4)(D) (emphasis added). Yet, the uncontested evidence presented by Plaintiffs shows that in the past the Board has noticed, at most, one subcommittee meeting in accordance with the Sunshine Act's commands. Indeed, as discussed below, the Board appears to believe—wrongly—that its subcommittee meetings fall outside the Act's purview. The Board therefore is likely to continue holding subcommittee meetings without providing the legally required notice to the public. The harm the follows from that practice is both obvious and certain: Plaintiffs cannot exercise their statutory right to attend and participate in subcommittee meetings that they do not know about. Accordingly, to prevent such harm, the court will enter a limited injunction that requires the Board, during the pendency of appeal, to comply with the Sunshine Act's notice requirements before it convenes a subcommittee meeting. The court, however, denies Plaintiffs' request for an injunction pending appeal as to the Board's full meetings, as Plaintiffs continue to fail to establish irreparable harm as to those alleged Sunshine Act violations.

For the reasons that follow, the court grants in part and denies in part Plaintiffs' Second Motion for Injunction Pending Appeal.[2]

I.

The court starts with a brief overview of what has transpired in this case to date.[3] On September 27, 2017, Plaintiffs filed their Complaint, Compl., ECF No. 1, along with their first motion for temporary restraining order and preliminary injunction, Pls.' Mot. for TRO & Prelim.

---

[2] Plaintiffs filed their "first" motion for injunctive relief pending appeal on December 27, 2017, but without meeting and conferring with Defendant as required by local rule. After satisfying the meet-and-confer requirement, Plaintiffs withdrew their original motion and filed an amended motion. *See* Am. Mot. for Prelim. Inj. Pending Appeal, ECF No. 51; Mot. to Withdraw Mot., ECF No. 52. The court mistakenly denied the amended motion as moot, prompting Plaintiffs to file the "second" motion for injunctive relief, which is before the court. *See* Minute Order, Jan. 4, 2018.

[3] For a more detailed factual background, the court directs the reader to its earlier opinions that are referenced herein.

Inj., ECF No. 2. As is relevant here, Plaintiffs asserted that the UCR Board had violated the Sunshine Act by failing to give adequate notice of its September 14, 2017, meeting, at which the Board decided to postpone the start of the annual period for interstate carrier registrations to an unspecified date after October 1, 2017. As a remedy for the alleged Sunshine Act violation, Plaintiffs asked the court to undo the Board's action. *See* Pls.' Mot for TRO & Prelim. Inj., Mem. in Support, ECF No. 2-1, at 1-2. The court denied Plaintiffs' motion for injunctive relief on the grounds that: (1) the Sunshine Act did not authorize invalidating the agency's action; and (2) Plaintiffs had failed to demonstrate irreparable harm. *See 12 Percent Logistics, Inc. v. Unified Registration Plan Bd.*, No. 17-cv-02000, 2017 WL 4736709, at *6–8 (D.D.C. Oct. 18, 2017) [hereinafter *12 Percent I*]. The court also declined to enjoin the Board from future Sunshine Act violations because Plaintiffs had identified only one such violation. *See id.* As a limited remedy, however, and as permitted under the Sunshine Act, the court ordered the UCR Board to immediately disclose its draft minutes and any recordings of the unnoticed September 14th meeting. *Id.*

Plaintiffs then filed an Amended Complaint and, on November 17, 2017, sought injunctive relief for a second time. *See 12 Percent Logistics, Inc. v. Unified Registration Plan Bd.*, No. 17-cv-02000, 2017 WL 5990123, at *1 (D.D.C. Dec. 1, 2017) [hereinafter *12 Percent II*]. In this iteration, Plaintiffs offered evidence that the Board historically had failed to publish timely notices of full Board meetings in the Federal Register and had consistently used boilerplate language to describe the subject matter of upcoming Board meetings. *See id.* at *4. The court nevertheless denied injunctive relief on the ground that Plaintiffs had failed to show irreparable harm. *See id.* The court reasoned that, notwithstanding these alleged historical violations, Plaintiffs were unlikely to suffer imminent harm from a future Sunshine Act violation because the UCR Board

3

had created a website that gives public notice of upcoming Board meetings, thereby enabling Plaintiffs to learn about and participate in those meetings. *Id*. Additionally, to the extent the Board had failed to disclose with specificity the subject matter of upcoming meetings, the court held that Plaintiffs had not presented actual proof of harm to warrant injunctive relief. *See id.* (noting that Plaintiffs' Amended Complaint "is silent as to any past harm Plaintiffs have suffered as a result of the boilerplate text or any future harm that they are likely to suffer in advance of upcoming meetings if the Board continues to use boilerplate text").

Not satisfied with the court's decisions, Plaintiffs made yet a third attempt at securing injunctive relief. *See* Order, ECF No. 47. On December 12, 2017, Plaintiffs complained that the UCR Board had not adhered to the Sunshine Act's notice requirements with respect to Board and subcommittee meetings scheduled for two days later, December 14, 2017. *See id.* at 1. Plaintiffs also presented evidence that the Board historically had not publicly noticed subcommittee meetings. Pls.' Third Mot. for TRO & Prelim. Inj., ECF No. 46, Mem. in Support, ECF No. 46-1, at 7. On December 13, 2017, the court rejected Plaintiffs' demand for injunctive relief yet again, finding that Plaintiffs had not established irreparable harm since they knew of the meetings being held the next day, and therefore, notwithstanding the alleged deficient notice, had "every opportunity to participate in them." Order, ECF No. 47, at 1. Additionally, the court faulted Plaintiffs for their unexplained delay in seeking relief after learning of the Sunshine Act violation regarding the December 14, 2017, meeting, thereby undermining their assertion of irreparable harm. *Id.* at 2. Accordingly, the court denied injunctive relief for a third time.

Plaintiffs then noticed an appeal from the court's second and third denials for injunctive relief. Notice of Appeal, ECF No. 48. Thereafter, they filed the present motion seeking an injunction pending appeal. *See* Pls.' Second Mot.

4

II.

Rule 62(c) of the Federal Rules of Civil Procedure authorizes a district court to issue an injunction pending appeal. Fed. R. Civ. P. 62(c). A motion brought under Rule 62(c) is subject to the same four criteria as a motion for preliminary injunction. *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977). The moving party "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam) (citing *Holiday Tours*, 559 F.2d at 843).

Plaintiffs urge the court to employ the "sliding scale" approach to injunctive relief, whereby an injunction can be justified by a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable harm. *See* Pls.' Second Mot. at 22 (citing *CityFed. Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). But whether that approach survives the Supreme Court's decision in *Winter* "remains an open question" in the D.C. Circuit. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014). Some D.C. Circuit judges have expressed the view that *Winter* supplants the "sliding scale" approach, and therefore a movant cannot obtain an injunction without showing "*both* a likelihood of success *and* a likelihood of irreparable harm." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (internal citations omitted). The Circuit has not, however, expressly disavowed adherence to the sliding scale approach. Thus, the unanswered question remains "whether the 'likelihood of success' factor is 'an independent, free-standing requirement,' or whether, in cases where the other

three factors strongly favor issuing an injunction, a plaintiff need only raise a 'serious legal question' on the merits." *Aamer*, 742 F.3d at 1043 (quoting *Sherley*, 644 F.3d at 393, 398).

The court here need not pick a side because under either approach the result is the same: Plaintiffs are entitled to partial injunctive relief.

### III.

Heeding the D.C. Circuit's admonition that "[t]he law requires that courts closely tailor injunctions to the harm that they address," *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990), the court considers Plaintiffs' request for an injunction pending appeal in two parts. The court first addresses Plaintiffs' claim that the Board continues to violate the Sunshine Act's requirements as to the noticing of its full meetings, and then turns to their contention with regard to the noticing of subcommittee meetings.

### A.

In seeking injunctive relief as to the Board's full meetings, Plaintiffs advance two theories of harm. First, they claim that the lack of notice of the September 14th meeting at which the Board postponed the opening of the registration period "denied the Plaintiffs and the public the opportunity to participate in the meeting. Because this meeting was the public's last chance to influence the Board's decision on delaying the registration period, Plaintiff's inability to participate was certainly harm in fact." Pls.' Second Mot. at 22; *see also id.* at 19 (asserting that "the public may not have been able to participate" in the October 26th meeting because of deficient notice); Pls.' Reply in Support of Mot. for Inj. Pending Appeal, ECF No. 59 [hereinafter Pls.' Reply], at 5 (arguing that "other interested parties in the public" may not have been able to attend the October 26, November 30, and December 14, full Board meetings, even though Plaintiffs did). Second, Plaintiffs contend that, although the UCR Board gave notice in the Federal Register of its

6

meetings held on October 26, November 30, and December 14, it described the subject matter of those meetings with the same "boilerplate language" it has used in the past: "The Unified Carrier Registration Plan Board of Directors (the Board) will continue its work in developing and implementing the Unified Carrier Registration Plan and Agreement and to that end, may consider matters properly before the Board." Pls.' Second Mot. at 15–16, 19–20. Such boilerplate, Plaintiffs contend, provides no meaningful notice as to the issues the Board planned to consider at those meetings. *Id*. at 15.

Neither of these claimed injuries rises to the level of irreparable harm. To begin, Plaintiffs' missed opportunity to participate in the September 14th Board meeting is a past harm for which the court already has granted the available statutory remedy—disclosure and public posting of the meeting minutes. *See 12 Percent I*, 2017 WL 4736709, at *8. Plaintiffs are entitled to no more relief as to that violation. Moreover, Plaintiffs' complaints of harm to the public are misplaced because Plaintiffs cannot establish irreparable harm as to *them* based on injury to others. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)). "[A] pure injury to third parties [is] reserved for the public-interest prong of the preliminary-injunction standard." *Arriva Med. LLC v. U.S. Dep't of Health & Human Servs.*, 239 F. Supp. 3d 266, 283 (D.D.C. 2017).

Insofar as Plaintiffs assert that the Board's continued use of boilerplate tells them nothing of substance about the Board's forthcoming business, that argument likewise falls short on the question of harm. Once more, Plaintiffs have offered no actual *proof* that the absence of specifics has adversely impacted their participation in past meetings or is likely to have such effect in the future. *See 12 Percent II*, 2017 WL 5990123, at *4. Additionally, the UCR Board has now taken

7

to posting agendas on its website in advance of Board meetings, which ameliorates any injury that might arise from the failure to publish specific subject matter information in the Federal Register. *See* January 2018 UCR Board of Directors Meeting, *https://ucrplan.org/events/january-2018-ucr-board-directors-meeting/* (last visited January 27, 2018).

Finally, Plaintiffs resurrect an argument the court rejected in the last go-around. Plaintiffs assert that the repeated denials of injunctive relief gives the Board a free pass on violating the Sunshine Act and effectively denies Plaintiffs and others the ability to enforce the statute through preliminary injunctive relief. Pls.' Second Mot. at 23. Not so. It is hardly a coincidence that only after Plaintiffs commenced this lawsuit did the UCR Board create a website that contains Board meeting notices, agendas, and meeting minutes. So, while Plaintiffs may not have yet achieved success in obtaining injunctive relief, their efforts at enforcing the Sunshine Act's requirements have succeeded in significant part. Moreover, Plaintiffs' criticism disregards the fact that injunctive relief is an "extraordinary and drastic" remedy, *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal citation omitted), which is available only upon an evidentiary showing of "certain," "great," and imminent harm, *Wisc. Gas Co.*, 758 F.2d at 674. Plaintiffs consistently have fallen short of that demanding standard. They have not, for instance, explained how they suffer irreparable harm by the Board's failure to publish notices in a timely manner in the Federal Register, when meetings are now posted on the Board's website. Nor have they ever come forward with proof of how they have been harmed by the Board's practice of using boilerplate subject-matter notices. Plaintiffs' outrage does not suffice to establish irreparable harm.

Accordingly, because Plaintiffs have not carried their burden of establishing irreparable injury resulting from the UCR Board's failure to strictly comply with the Sunshine Act's notice

requirements as to its full meetings, the court denies Plaintiffs' request for injunctive relief pending appeal as to those meetings.

B.

The court reaches a different conclusion with respect to the UCR Board's subcommittee meetings. As to those meetings, Plaintiffs have satisfied the four *Winter* factors.

First, Plaintiffs have shown that they are likely to succeed on the merits. The Unified Carrier Registration Act states that "[m]eetings of the board *and any subcommittees* or task forces . . . shall be subject to the provisions of section 552b of title 5," i.e., the Sunshine Act. 49 U.S.C. § 14504a(d)(4)(D) (emphasis added). The UCR Agreement says the same. *See* Compl., Ex. 2, ECF No. 1-1, ¶ 15(i)(5). According to Plaintiffs' review of the public record, however, with perhaps one exception, the UCR Board has *never* complied with the Sunshine Act's public notice requirements with respect to subcommittee meetings. *See* Pls.' Second Mot., Fourth Decl. of Kevin Rea, ECF No. 53-1, ¶¶ 13–18; Pls.' Third Mot. for TRO & Prelim. Inj., Third Decl. of Kevin Rea, ECF No. 46-3, ¶¶ 5–7; Pls.' Third Mot. for TRO & Prelim. Inj., Ex. 17, ECF No. 46-4. This almost certainly is not by happenstance. As reflected in minutes of the Board's March 3, 2011, meeting, the Board's Chairman, Avelino Gutierrez, believes that "as long as there is no statutory or board explicit authority delegated to the subcommittees to take action on behalf of the board, the Board subcommittee meetings do not have to be noticed." Pls.' Second Mot., Ex. 23, ECF No. 53-3, at 3. Chairman Gutierrez's view, which is plainly contrary to law, confirms Plaintiffs' findings that, as a matter of practice, the UCR Board does not publicly notice its subcommittee meetings. Defendant offers no argument or proof to the contrary. *See generally* Def.'s Mem. of Points and Authorities in Opp'n to Pls.' Second Mot. for Inj. Pending Appeal, ECF No. 58 [hereinafter Def.'s Opp'n]. Thus, in view of the uncontested evidence presented, the court finds

that Plaintiffs are likely to succeed in showing that the UCR Board has violated and will continue to violate the Sunshine Act by failing to provide public notice of the Board's subcommittee meetings consistent with the Act's mandates.

Plaintiffs also have made a showing of irreparable harm. Plaintiffs contend that the Board's failure to supply public notice of its subcommittee meetings has "denied [them] the right to participate in these meetings and . . . denied [them] any ability to influence the decisions made at these undisclosed meetings." Pls.' Second Mot. at 24. Plaintiffs have submitted proof to support that assertion. Plaintiffs' declarant, Kevin Rea—the Membership and Events Manager of Plaintiff Small Business in Transportation Coalition—attests that before December 14, 2017, he had never attended or listened to a UCR Board subcommittee meeting. Fourth Decl. of Kevin Rea, ¶ 12. Moreover, he says that, had he received notice of such a meeting, he "would have listened and attended." *Id.* Rea's statements constitute "proof that . . . harm has occurred in the past" and "that the harm is certain to occur in the near future." *Wisc. Gas Co.*, 758 F.2d at 674. The Board's consistent and complete lack of notice has denied Plaintiffs the opportunity to attend and attempt to influence policy at subcommittee meetings in the past and, without injunctive relief, the same is likely to happen in the future. Accordingly, Plaintiffs have met the high bar of irreparable harm.

The fact that Plaintiffs are aware of upcoming subcommittee meetings planned for January 29 through January 31, 2018, as Defendant points out, does not compel a different result. Def.'s Opp'n at 6. The notice that Plaintiffs received shows nothing more than the dates and times for planned subcommittee meetings; it says nothing about which subcommittees will meet—there are eight UCR Board subcommittees—or what matters will be discussed. Notice of UCR Plan Board Winter Meeting Agenda, ECF No. 54 [hereinafter "Notice"] (conference agenda listing only time periods for "UCR Subcommittee Meetings"). Merely providing Plaintiffs a time and place at

which to show up, without more, hardly constitutes meaningful notice. Moreover, Plaintiffs remain in the dark about subcommittee meetings occurring after January. Given the Board's past practice of not publicly noticing subcommittee meetings, and its Chairman's mistaken belief that such meetings are not subject to the Sunshine Act, the court has little faith that the Board will discharge its statutory notice obligations when the calendar turns to February. Plaintiffs' limited notice of upcoming subcommittee meetings therefore does not extinguish the likelihood of irreparable harm.

The balance of equities also tips in favor of granting the injunction, except in one respect. Plaintiffs' interest in receiving sufficient advance notice of Board subcommittee meetings outweighs the additional burden placed on the UCR Board to provide such notice. This is plain in light of the statutory obligation placed on the Board. *See* 49 U.S.C. § 14504a(d)(4)(D). That conclusion does not, however, pertain to the subcommittee meetings scheduled for January 29 through January 31, 2018. To enjoin the Board from holding those meetings at this late date would unjustifiably impede the Board's regular business, as well unfairly affect those who have undertaken the expense to attend. *See generally* Notice, Ex. 54-1 (showing that UCR subcommittee meetings in New Orleans, Louisiana, are scheduled in connection with another organization's meeting). Such disruption is uncalled for, particularly since Plaintiffs have at least some notice of the upcoming meetings. These mitigating factors, however, disappear once the January meetings have concluded.

Finally, the public interest favors granting equitable relief. "Forcing federal agencies to comply with the law is undoubtedly in the public interest[.]" *Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015). Additionally, "[t]he public interest is, no doubt, served by a transparent government." *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 92

(D.D.C. 2007). Requiring the Board's subcommittee meetings to comply with the Sunshine Act therefore is in the public interest.

In conclusion, the court finds that the fourth time's a charm. In Plaintiffs' last attempt, they emphasized limited injuries arising out of notice deficiencies in advance of the December 14th full Board and subcommittee meetings and, in the court's view, delayed in seeking injunctive relief. In this instance, however, Plaintiffs timely sought to enjoin violations of the Sunshine Act for future subcommittee meetings, the scheduling of which is a complete unknown. Moreover, evidence presented for the first time showing the UCR Board Chairman's belief that subcommittee meetings are not subject to the Sunshine Act's requirements clearly demonstrates that the Board's past failures to publicly notice such meetings is not a mere oversight. Rather, that practice reflects, at a minimum, a misguided decision not to consider the mandates of the UCR's own governing statute, which clearly subjects subcommittee meetings to the Sunshine Act. Therefore, Plaintiffs here have satisfied the four *Winter* factors with respect to subcommittee meetings of the UCR Board.

### IV.

For the foregoing reasons, the court grants in part and denies in part Plaintiffs' Second Motion for Injunction Pending Appeal and Memorandum in Support. A separate Order accompanies this Memorandum Opinion.

Dated: January 29, 2018

Amit P. Mehta
United States District Judge