# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 12 PERCENT LOGISTICS, INC., et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) Case No. 17-cv-02000 (APM) |
| | ) |
| UNIFIED CARRIER REGISTRATION | ) |
| PLAN BOARD, et al. | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM OPINION

## I.  INTRODUCTION

In 2005, Congress established Defendant Unified Carrier Registration ("UCR") Plan Board.  The Board is tasked with administering the UCR Plan Agreement, an interstate compact that governs the "collection and distribution of registration and financial responsibility information provided and fees paid by motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies."  49 U.S. Code § 14504a(a)(8).  Defendant Indiana Department of Revenue ("INDOR") is a signatory of the Plan Agreement and, pursuant to various memorandums of understanding with the Board, operates an on-line portal to register carriers and collect fees nationwide.

Plaintiffs are UCR registrants, who brought this action on September 27, 2017.  They assert two claims.  The first is rooted in the UCR enabling act, 49 U.S.C. § 14505a, and the UCR Plan Agreement, both of which provide that the Board's meetings and subcommittee meetings are subject to the public notice requirements contained in the federal Sunshine Act.  Plaintiffs claim that, for years, the Board has violated the Sunshine Act by, among other things, failing to provide

timely notice of meetings and not divulging meaningful detail as to their subject matter. Plaintiffs' second claim is predicated on another aspect of the UCR Plan Agreement. When Plaintiffs first filed this action, the Agreement provided that the registration period for the next calendar year would open on October 1st of the prior year. In 2017, the Board voted multiple times to delay the start of the registration period beyond October 1, 2017. In their complaint, Plaintiffs asked the court to compel the Board and INDOR to open the registration process immediately. The Board finally opened registration in January 2018.

Plaintiffs request a declaratory judgment and permanent injunctive relief against the Board for alleged violations of the Sunshine Act, and against the Board and INDOR for violating the UCR Plan Agreement. During the course of these proceedings, Plaintiffs filed numerous requests for injunctive relief. The court denied most of these requests, including Plaintiffs' demand to open the 2018 registration period. In January 2018, however, the court entered a limited injunction requiring the Board's subcommittee meetings to adhere to the Sunshine Act's notice requirements. The parties now submit cross-motions for summary judgment.

For the reasons stated below, the court grants Plaintiffs' motion in part and Defendants' motion in part. The court finds that the Board violated the Sunshine Act by making public only boilerplate descriptions of the subject matter of all meetings and by failing to provide timely notice of subcommittee meetings. With regard to other aspects of Plaintiffs' Sunshine Act claim, and their claim alleging a violation of the UCR Plan Agreement because of the delayed opening of the 2018 registration period, the court enters judgment in favor of Defendants.

## II.    BACKGROUND

### A.    Factual Background

The UCR Plan Agreement is an interstate compact whose purpose is to coordinate the registration and collection of fees and information from motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies, whose commercial vehicles travel in interstate commerce. *See generally* 49 U.S.C. § 14504a. The Plan is overseen by the UCR Plan Board, a 15-member commission created by an Act of Congress ("UCR Act") and appointed by the Secretary of Transportation. *See* 49 U.S.C. § 14504a(d)(1). The Board has several subcommittees such as audit, dispute resolution, and industry, which hold their own meetings. 49 U.S.C. § 14504a(d)(5).

Forty-one states participate in the UCR Agreement. *See* Def. UCR Plan Board's Cross Mot. for Summ. J., ECF No. 93 [hereinafter UCR Def.'s Mot.]; UCR Def.'s Exhibits, ECF No. 93-1 [hereinafter UCR Def.'s Exs.], at 2.[1] The State of Indiana is a member state. Under various memorandums of understanding between the Indiana Department of Revenue (INDOR) and the Board, INDOR registers carriers and collects UCR fees and information from registrants. Pls.' Stmt. of Undisputed Facts, ECF No. 76 [hereinafter Pls.' Facts], ¶¶ 4, 17; Def. INDOR's Stmt. of Undisputed Facts, ECF 94-1 [hereinafter INDOR Def.'s Facts], ¶ 1. Carriers register and pay UCR fees annually. 49 U.S.C. § 14504a(d)(7), (f)(4), (h).

The Secretary of Transportation determines the annual UCR fee amounts charged to carriers based on recommendations made by the Board. 49 U.S.C. § 14504a(d)(7)(B). When the Board proposes changes to the annual rates, the Secretary must act within 90 days of receiving the Board's recommendations, a timeline that includes a period of notice and comment. *Id.* At the

---

[1] The court uses CM/ECF-generated pagination when citing to the Board's exhibits.

time Plaintiffs filed their Amended Complaint, the UCR Plan Agreement provided that the annual registration period would begin on October 1. UCR Def.'s Exs. at 12 (UCR Agreement) ("'Renewal period' means, with respect to a registration year, the period of October 1 through December 31 of the immediately preceding year.").

In March 2017, the Board voted to recommend a revised fee structure for 2018 and 2019 and forwarded the recommendations to the Secretary of the Treasury. Pls.' Facts ¶ 39; UCR Def.'s Stmt. of Undisputed Facts, ECF No. 93-2 [hereinafter UCR Def.'s Facts], ¶ 39. When the Secretary did not act within 90 days, at a meeting held on September 14, 2017, the Board voted to delay the start of the 2018 registration period until November 1, 2017. Pls.' Facts ¶¶ 41, 43, 44; UCR Def.'s Facts ¶¶ 41, 43, 44. Following continued inaction by the Secretary, at its next meeting on October 26, 2017, the Board yet again voted to delay registration for 2018, this time "until further notice." Pls.' Facts ¶¶ 47, 48; UCR Def.'s Facts ¶¶ 47, 48. The Board and INDOR eventually opened the 2018 registration period on January 5, 2018. INDOR Stmt. of Facts ¶ 2; Pls.' Reply to UCR Def.'s Mot., ECF No. 97 [hereinafter Pls.' Reply], at 12.

### B. The Sunshine Act

Both the UCR Act and UCR Agreement require meetings of the Board and its subcommittees to adhere to the public notice requirements of the Sunshine Act. *See* 49 U.S.C. § 14504a(d)(4)(D) ("Meetings of the board and any subcommittees . . . shall be subject to the provisions of [the Sunshine Act]."); UCR Def.'s Exs. at 22 (UCR Agreement, ¶ 15(i)(5)). The Sunshine Act provides that:

> In the case of each meeting, the agency shall make public announcement, at least one week before the meeting, of the time, place, and subject matter of the meeting, whether it is to be open or closed to the public, and the name and phone number of the official designated by the agency to respond to requests for information about the meeting . . .

5 U.S.C. § 552b(e)(1). In addition, the Act further mandates that:

> Immediately following each public announcement required by this subsection, notice of the time, place, and subject matter of a meeting, whether the meeting is open or closed, any change in one of the preceding, and the name and phone number of the official designated by the agency to respond to requests for information about the meeting, shall also be submitted for publication in the Federal Register.

*Id.* § 552b(e)(3). Plaintiffs contend that the Board and its subcommittees violated these provisions by routinely failing (1) to make public announcements at least one week before meetings, (2) to publish timely Federal Register notices, and (3) to disclose any meaningful description of the subject matter to be discussed at meetings. *See* Am. Compl., ECF No. 35 [hereinafter Am. Compl.], ¶¶ 23–31.

### C. Procedural Background

Plaintiff 12 Percent Logistics, Inc. is a registrant that pays UCR fees through INDOR, and Plaintiff Small Business in Transportation Coalition is a trade organization that includes members who register and pay UCR fees through INDOR. Pls.' Facts ¶¶ 1, 2. Plaintiffs filed their initial complaint on September 27, 2017, against the Board and INDOR,[2] along with a motion for a temporary restraining order and preliminary injunction. *See* Compl., ECF No. 1 [hereinafter First Compl.]; Pls.' Mot. for TRO & Prelim. Inj., ECF No. 2 [hereinafter Pls.' TRO Mot.]. Plaintiffs alleged that (1) the Board and INDOR violated the UCR Plan Agreement by not opening the 2018 registration period on October 1, 2017, and (2) the Board violated the Sunshine Act by not adequately noticing the September 2017 meeting at which the Board made that decision. *See* First Compl. ¶¶ 37–45, 64–71; Pls.' TRO Mot.[3] Plaintiffs demanded that the court undo the Board's

---

[2] Plaintiffs also named Adam Krupp, in his official capacity as Commissioner of INDOR, as a defendant. For ease of reference, the court refers to INDOR and Krupp simply as INDOR.

[3] Plaintiffs' initial complaint also contained causes of action under the Administrative Procedure Act. *See* First Compl. ¶¶ 46–63. Plaintiffs later abandoned those claims.

action and order the Board and INDOR to open the registration period immediately. *See* Pl.'s TRO Mot. at 14. Although the court found that the Board's public notice for the September 2017 meeting did not conform with the Sunshine Act's requirements, it did not grant the requested injunctive relief on the grounds that: (1) the Sunshine Act did not authorize invalidating the Board's action in that instance; and (2) Plaintiffs had failed to demonstrate irreparable harm. *See 12 Percent Logistics, Inc. v. Unified Registration Plan Bd.*, 282 F. Supp. 3d 190, 196–99, 202 (D.D.C. 2017) [hereinafter *12 Percent I*]. The court also declined to enjoin the Board from future Sunshine Act violations because Plaintiffs had identified only one such violation. *See id.* at 199. As a remedy for the single identified violation, the court ordered the Board to disclose its draft minutes and any recordings of the September 2017 meeting. *Id.*

Plaintiffs then filed an Amended Complaint on November 3, 2017. *See* Am. Compl. The primary difference from their initial complaint was that, in the second pleading, Plaintiffs substantially expanded their Sunshine Act claim. Plaintiffs undertook a historical survey of nearly 125 Board meetings and asserted that the Board, for years, had routinely violated the Sunshine Act in multiple ways, including failing to publicly announce meetings, giving untimely notice of meetings in the Federal Register, and issuing boilerplate descriptions of anticipated business at meetings. *See* Am. Compl. ¶¶ 23–27. Plaintiffs also renewed their claim against the Board and INDOR under the UCR Agreement based on the still-delayed opening of the 2018 registration period. *See id.* ¶¶ 28–40. As relief, Plaintiffs asked the court to (1) declare that the Board had violated the Sunshine Act, the UCR Act, and the UCR Plan Agreement by failing to give adequate public notice of its meetings; (2) declare invalid and set aside the Board's actions taken at the September 14, 2017, and October 26, 2017, meetings, including delaying the start of the 2018 registration period; (3) order the Board to take "appropriate remedial action" for Sunshine Act

violations occurring in connection with the September and October meetings; (4) enjoin the Board from further violations of the Sunshine Act; (5) enjoin the Board from violating the UCR Agreement and order it to reopen the 2018 renewal period; and (6) compel INDOR to open the 2018 renewal period. *See* Am. Compl. at 16–17.

With the filing of their Amended Complaint, Plaintiffs once more sought injunctive relief. *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd*., 280 F. Supp. 3d 118 (D.D.C. 2017), *appeal dismissed*, No. 17-5287, 2018 WL 3156843 (D.C. Cir. May 29, 2018) [hereinafter *12 Percent II*]. Though Plaintiffs had offered evidence that the Board historically failed to publish timely notices of full Board meetings in the Federal Register and consistently used boilerplate language to describe the subject matter of upcoming Board meetings, the court denied injunctive relief on the ground that Plaintiffs had failed to show irreparable harm. *See id.* at 124.

Unsatisfied, Plaintiffs made a third attempt at securing injunctive relief in December 2017. *See* Order, ECF 47 [hereinafter *12 Percent III*]. Plaintiffs complained that the UCR Board still had not adhered to the Sunshine Act's notice requirements with respect to upcoming Board and subcommittee meetings. *Id*. at 1. Plaintiffs also presented evidence, for the first time, that the Board historically had not publicly noticed subcommittee meetings, even though legally required to do so. Pls.' Third Mot. for TRO & Prelim. Inj., ECF No. 46, Mem. in Support, ECF No. 46-1, at 7. The court rejected Plaintiffs' demand for injunctive relief once more, finding that Plaintiffs had not established irreparable harm since they were aware of the upcoming meetings and thus had "every opportunity to participate in them." *12 Percent III* at 1.

Plaintiffs returned the next month to try yet again. In January 2018, Plaintiffs asked for an order enjoining the Board to comply with the Sunshine Act and properly notice all future Board

and subcommittee meetings during the pendency of their appeal of the court's denial of their second request for an injunction. *See generally 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F. Supp. 3d 73 (D.D.C. 2018) [hereinafter *12 Percent IV*]. The court granted the injunction as to subcommittee meetings, in part because of evidence showing that the Board's chairman wrongly believed that subcommittee meetings are not subject to the Sunshine Act. The court required the Board "to comply with the Sunshine Act's notice requirements before it convenes a subcommittee meeting" during the pendency of the appeal. *Id*. at 76. The court, however, once more denied injunctive relief as to Board meetings, holding that Plaintiffs again had not shown irreparable harm. *Id*.

But Plaintiffs were not finished. A few months later, Plaintiffs filed an emergency motion asking the court to cancel the Board's ten subcommittee meetings scheduled for June and July 2018 and to hold the Board in contempt for allegedly violating the court's injunction. *See generally 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22 (D.D.C. 2018) [hereinafter *12 Percent V*]. The court denied Plaintiffs' motion for failure to meet and confer as required by Local Civil Rule 7(m), *see* LCvR 7(m), as well as on the merits, finding that the Board had substantially complied with the Sunshine Act. *See 12 Percent V*, 316 F. Supp. 3d at 25.

## III.  LEGAL STANDARD

Each party now moves for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In assessing a motion for summary judgment, the court considers all relevant evidence presented by the parties. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court looks at the facts in the light most favorable to the non-moving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the court determines "no reasonable jury could reach a verdict in her favor," then summary judgment is appropriate. *Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). When ruling on a summary judgment motion, courts are "not to make credibility determinations or weigh the evidence." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## IV. DISCUSSION

The court starts with Plaintiffs' assertion that the Board and INDOR violated the UCR Plan Agreement by delaying the start of the 2018 registration period, and then turns to their Sunshine Act claim.

### A. Violation of the UCR Agreement

Defendants offer two reasons why the court should enter judgment in their favor on Plaintiffs' claim arising under the UCR Plan Agreement. First, they argue that the claim is moot. Second, they contend Plaintiffs have no private right of action to enforce the UCR Plan Agreement. The court agrees with both contentions.

#### 1. *Mootness*

##### a. The Board's opening of the 2018 registration period renders moot Plaintiffs' claim under the UCR Plan Agreement

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733

F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). "In general, a case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008)). "If events outrun the controversy such that the court can grant no meaningful relief, the [claim] must be dismissed as moot." *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001). "The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies[.]" *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citations omitted).

Here, there can be little doubt that "events [have] outrun the controversy" over the delayed opening of the 2018 registration period. On January 5, 2018, the UCR Plan Board opened the 2018 registration period, *see* INDOR Def.'s Facts ¶ 2; Pls.' Reply at 12, and the period has since expired. The sole affirmative relief that Plaintiffs seek for the Board's and INDOR's alleged violations of the UCR Plan Agreement is to open registration for 2018 immediately. *See* Am. Compl. at 17 ¶¶ 5, 6; *see also id.* ¶ 75.[4] Of course, such relief is no longer available. Nor can Plaintiffs' request for declaratory judgment save the claim from mootness. *See NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012). Accordingly, Plaintiffs' claim arising under the UCR Plan Agreement is moot.[5]

---

[4] Plaintiffs' proposed order granting summary judgment in their favor asks the court to enjoin "[t]he UCR Plan Board, INDOR, and any current or subsequent agent of the UCR Plan Board . . . from further violating the UCR Agreement." Pls.' Mot., Proposed Order, ECF No. 75-2, at 2. This relief is more expansive than sought in Plaintiffs' Amended Complaint. *Compare* Am. Compl. at 17 ¶¶ 5, 6. Accordingly, the court does not consider it.

[5] Plaintiffs also ask the court to "take appropriate remedial action" for the Sunshine Act violations that occurred in connection with the September 14, 2017, and October 26, 2017, meetings. *See* Am. Compl. at 16 ¶ 3. To the extent "appropriate remedial action" can be construed to mean opening the registration period for 2018, that aspect of Plaintiffs' Sunshine Act claim likewise is moot.

b.    Exceptions to the Mootness Doctrine do not Apply

Plaintiffs do not seriously dispute that their claim under the UCR Plan Agreement is moot insofar it seeks opening of the 2018 registration period.  Plaintiffs argue, however, that the "capable of repetition, yet evading review" exception applies and enables the court to reach the merits, because the Board is likely to delay the registration period in the future and again violate the UCR Plan Agreement.  Pls.' Reply to INDOR Def.'s Opp'n., ECF No. 96 [hereinafter Pls.' Reply to INDOR], at 6–9.  Plaintiffs' concern is not unfounded.  As Plaintiffs point out, in September 2018, the Board yet again postponed opening the registration period, this time for 2019.  *See* Pls.' Notice to Court Regarding Delay of the 2019 UCR Renewal Period, ECF No. 101.  Plaintiffs' argument would have some force but for recent Board action that renders the "capable of repetition, yet evading review" exception inapplicable.  *See District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010) (stating that the "capable of repetition, yet evading review" exception applies only if "there [is] a reasonable expectation that the same complaining party will be subject to the same action again") (internal quotation marks and citation omitted).

At its August 2018 meeting, the Board amended the UCR Plan Agreement to allow the registration period to open after October 1, if the Secretary of Treasury has yet to act on the Board's fees recommendations.  *See* Decl. of Avelino A. Gutierrez, ECF No. 102, ¶ 4.  The Agreement now states that "[t]he registration period . . . shall begin on the later of October 1, *or if the Board has made a fee level change recommendation to the USDOT Secretary*, the date the fee level rulemaking takes effect."  *Id.* (emphasis added); *see also id.* (similarly amending definition of "renewal period").  Thus, by virtue of the amendment, the action that Plaintiffs fear will recur in the future—delaying the registration beyond October 1—no longer will violate the UCR Plan Agreement, so long as the delay arises from the Secretary of Transportation's failure to timely act

on the Board's fees recommendation. Plaintiffs offer no reason to believe that the Board will delay the renewal period in the future for any other purpose. Therefore, the "capable of repetition, yet evading review" exception cannot save Plaintiffs' claim.

*  *  *

Before proceeding further, the court notes that Plaintiffs object to the way in which the Board amended the UCR Plan Agreement at its August 2018 meeting. *See* Reply to Chairman Gutierrez's Decl., ECF No. 103 [hereinafter Def.'s Reply to Gutierrez Decl.].[6] They assert, among other things, that the Board's amendment process did not follow procedures set forth in the Agreement and the UCR Act, *see id.* at 3–4, and that the Board did not notice the meeting consistent with the Sunshine Act, *see id.* at 2–3. Plaintiffs say that these deficiencies further support their claims. *See id*. at 8. Maybe they do, maybe they don't, but in either event, these contentions cannot be resolved as part of this action. They are beyond the scope of Plaintiffs' Amended Complaint and cannot be raised for the first time in a supplemental notice filed in support of their summary judgment briefing. *See Winder v. District of Columbia*, 555 F. Supp. 2d 103, 111 (D.D.C. 2008) ("[Plaintiff] may not add a new claim through summary judgment briefing.").

### 2. *Private Right of Action*

Though the court views Plaintiffs' claim under the UCR Plan Agreement as moot, in the interest of completeness, the court addresses the Board's alternative contention that Plaintiffs have no private right of action to enforce the UCR Plan Agreement.

The parties agree that neither the UCR Act nor the UCR Plan Agreement provides an express private right of action to registrants. *See* UCR Def.'s Mot. at 14 (arguing that the statute

---

[6] The Board moves to strike Plaintiffs' Reply to Chairman Gutierrez's declaration. *See* Def.'s Mot. to Strike, ECF No. 104. The court declines to do so. Although the court will not consider the legal arguments made in the Reply, the court will consider the record evidence referenced therein.

"unquestionably demonstrates that Congress did not intend to create a private right of action"); Pls.' Reply at 12–13 (not contesting the absence of an express right). Lacking an express hook, Plaintiffs rely on two theories to state a claim. First, they contend that the UCR Act provides an *implied* private right of action. *See id.* at 12–15. Second, they argue that the UCR Plan Agreement is an interstate compact and they have standing as third-party beneficiaries to enforce it. *See id.* 15–20. Both arguments are non-starters.

a.    Implied right of action under the UCR Act

To determine whether Congress intended to create an implied cause of action, courts must look first and foremost to the "text and structure" of the statute. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001); *Lee v. U.S. Agency for Int'l Develop.*, 859 F.3d 74, 77 (D.C. Cir. 2017). A court also may consider the four factors set forth by the Supreme Court in *Cort v. Ash*:

> (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law.

*Tax Analysts v. I.R.S.*, 214 F.3d 179, 185 (D.C. Cir. 2000) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). "[T]he Court did not decide that each of these factors is entitled to equal weight," and so "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979).

In this case, the "text and structure" of the UCR Act conclusively establish that the Act contains no implied right of action. The UCR Act contains a section titled "Enforcement," which provides that, "[u]pon request by the Secretary, the Attorney General may bring a civil action in the United States district court . . . to enforce an order issued to require compliance with this section

and with the terms of the UCR agreement." 49 U.S.C. § 14504a(i)(1). There is, however, no similar grant of a right to sue for registrants. Moreover, the Enforcement section states that, "on a proper showing [the court] shall issue a temporary restraining order or a preliminary or permanent injunction requiring that *the State or any person* comply with this section." *Id.* § 14504a(i)(3) (emphasis added).[7] Notably, the Act says nothing about granting injunctive relief against *the Board*. These provisions, i.e., the "text and structure" of the Act, make clear that the Act supplies no private right of action to a registrant to enforce the UCR Agreement against the Board. *Cf. M.F. v. State of New York Exec. Dep't Div. of Parole*, 640 F.3d 491, 496 (2d Cir. 2011) (reaching a similar conclusion with respect to the Interstate Compact for Adult Offender Supervision).

The court could stop here, but there is more. Nothing in the statute creates any rights in favor of registrants as against the Board. Other than establishing the Board, the Act largely speaks only of states and their obligations under the Agreement. Moreover, the clear purpose of the statute is to establish a system by which to collect fees and information from carriers who operate in interstate commerce and distribute those fees to member states. *See generally* 49 U.S.C. § 14504a. Although a centralized system to impose and collect fees and information surely benefits interstate carriers, the Act cannot be read to have as a primary aim to protect their interests. In these respects, the UCR Plan Agreement is very much like the Interstate Compact on Adult Supervision and its predecessor that the Second and Third Circuits have found do not create an implied right of action for offenders. *See M.F.*, 640 F.3d at 496 ("'The language of the Compact itself creates rights for

---

[7] The Act incorporates the definition of "person" contained in 1 U.S.C. § 1 and 49 U.S.C. § 13102. It is not apparent to the court that the Board qualifies as a "person." The court makes no formal finding, however, because there remains a genuine dispute of fact as to the Board's formal status under federal law. *Compare* Pls.' Facts ¶ 3 (alleging the Board to be a "non-governmental, private entity" and an "interstate compact organization") *with* UCR Def.'s Facts ¶ 3 (demurring on legally classifying the Board's status).

the various states who are signatories to it. It does not create rights for probationers or parolees[,]' [and] . . . there is no indication, in the Compact itself or in its authorizing statute, that Congress or the compacting states intended to create a remedy to benefit offenders like [plaintiff].") (quoting *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 104 (3d Cir. 2008).

If there were any doubt remaining about the absence of an implied right of action, D.C. Circuit precedent resolves it. At an early stage in this case, Plaintiffs conceded that Board action is not subject to review under the Administrative Procedure Act ("APA"). *See* Nov. 29, 2017 Hr'g Tr., ECF No. 62, at 15. That concession is significant. In *El Paso Natural Gas Co. v. United States*, the D.C. Circuit confronted the question whether the Indian Dump Cleanup Act, *see* 25 U.S.C. § 3901 et seq., contains an implied private right of action. 750 F.3d 863, 890 (D.C. Cir. 2014). In answering the question "no," the court observed that the plaintiff lacked a cause of action under the APA. Such absence, the court explained, was strong evidence that Congress did not intend to imply a right of action.

> [T]he absence of an APA claim here "only reinforces [the court's] view that the [statute] creates no implied right of action, for it would be quite odd to hold that Congress implicitly created a cause of action despite another statute's preclusion of such an action. Given Congress's presumed awareness of the APA's provisions, we believe—in accordance with the holdings of other circuits—that Congress would make explicit any intent to create a cause of action in these circumstances."

*Id.* (quoting *Godwin v. Sec'y of HUD*, 356 F.3d 310, 312 (D.C. Cir. 2004)). So it is here. Had Congress wanted to expose the Board's decision-making to judicial scrutiny by private-party actions, Congress easily could have made the Board subject to the APA, just as it subjected the Board to the Sunshine Act. But the fact that Congress left the Board outside the reach of the APA is compelling evidence that it did not intend for registrants to have a right of action against the Board.

Plaintiffs' position to the contrary rests on the head of pin. Plaintiffs point only to the UCR Act's limitation on state action to prevent an "unreasonable burden" on interstate commerce as the source of a private right of action. Pls.' Reply at 13. That provision states:

> [I]t shall be considered an unreasonable burden upon interstate commerce for any State or any political subdivision of a State or any political authority of two or more States to enact, impose, or enforce any requirement or standards with respect to, or levy any fee or charge on, any motor carrier or motor private carrier . . .

"in connection with," among other things, registering or making other required filings with a state. 49 U.S.C. § 14504a(c). Plaintiffs take from this text that "Congress intended to provide a mechanism for redress to parties that suffer unjust and unreasonable burdens, specifically those that are charged to comply with the requirements of the UCR Authorizing Statute." Pls.' Reply at 13.

Plaintiffs' reading of the Act flies in the face of any rational interpretation of its "text and structure." First, the "unreasonable burden" section addresses only the imposition of fees or other standards in connection with various state-level filings. 49 U.S.C. § 14504a(c). It says nothing about the timing of registration under the Act. Second, that section sets forth restrictions on the fee-charging and standard-setting authority of member states, their political subdivisions, "or any political authority of two or more States." *Id*. It places no limitations on the Board, let alone on the Board's capacity to delay the opening of annual registration.[8] Finally, there is no reason to believe that Congress embedded a private right of action into a provision designed to lessen the burdens on interstate commerce. Admittedly, the limitations placed on member states protects registrants from excess fees and obligations. But the Act's primary concern is with not burdening interstate commerce, not protecting individual carriers.

---

[8] The "unreasonable burden" provision does apply to INDOR. But, of course, this suit has nothing to do with any of the restrictions set forth in that provision.

In short, the UCR Act contains no implied private right of action that would support Plaintiffs' claim that the Board violated the UCR Plan Agreement in 2017 by delaying the start of the registration period.

b.    <u>Third-party beneficiaries of the UCR Plan Agreement</u>

Plaintiffs next assert that they can bring a claim against the Board and INDOR for violating the UCR Plan Agreement as third-party beneficiaries of the interstate compact. They claim that the "clear intent of the UCR Agreement is to establish for interstate Carriers a simple process under which interstate Carriers must register and pay state fees" and that, as a result, Plaintiffs "are the intended 'third-party beneficiaries' of the UCR Agreement" who possess the right to sue to enforce the Agreement. Pls.' Reply at 19. The court disagrees.

The UCR Plan Agreement is an interstate compact and thus is subject to principles of contract law. *See Tarrant Regional Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013) ("Interstate compacts are construed as contracts under the principles of contract law."); *Doe*, 513 F.3d at 105 ("Interstate compacts may be considered contracts because of the manner in which they are enacted: there is an offer (the presentation of a reciprocal law to state legislatures), an acceptance (the actual enactment of the law) and consideration (the settlement of a dispute or the creation of a regulatory scheme)."). Third-party beneficiaries are entitled to enforce the provisions of a contract to which they are not themselves parties. *See Doe*, 513 F.3d at 106 ("In addition to the parties to a contract, 'third-party beneficiaries' of the contract can also enforce its terms."). "In order to find that [a plaintiff] is a third-party beneficiary, the Court must . . . determine whether the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Mariano v. Gharai*, 999 F. Supp. 2d 167, 173 (D.D.C. 2013) (internal quotations omitted); *cf. Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., LTD.*, 902 F. Supp.

2d 87, 100 (D.D.C. 2012) ("'Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly' the party urged to be a third-party beneficiary.") (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008)); *see also Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 189 (D.D.C. 2016) (accord). Thus, the question is whether the states intended to make registrants third-party beneficiaries of the Agreement. The court finds that they did not.

As discussed, the purpose of the UCR Agreement is to "govern[] the collection and distribution of registration and financial responsibility information provided and fees paid by motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies pursuant to this section." 49 U.S.C. § 14504a(a)(8). Its focus is on helping *states*, by facilitating their efforts to regulate interstate carriers. Registrants are merely subject to the compact; they are not the beneficiaries of it.

This reading is supported by Third Circuit's decision in *Doe v. Pennsylvania Board on Probation & Parole*. The court in *Doe* addressed the Interstate Compact Concerning Parole and Probation, which provided as follows: "It is the purpose of this compact . . . through means of joint and cooperative action among the compacting states: . . . to provide for the effective tracking, supervision, and rehabilitation of these offenders . . .; and to equitably distribute the costs, benefits and obligations of the compact." *Doe*, 513 F.3d at 106–07. Seeking to enforce one of its provisions, a parolee claimed that he was a third-party beneficiary of the Interstate Compact. *See id*. at 105–07. The Third Circuit held otherwise. It explained that "[t]he Compact speaks of cooperation between states, protection of the rights of victims, [and] regulation and control of offenders across state borders[.]" *Id.* at 107. Based on this reading, the court held, the "[plaintiff] and similarly situated parolees are not beneficiaries of this Compact; they are merely the subjects

of it." *Id.* The parallels between *Doe* and this case are clear. Like the Interstate Compact in *Doe*, the UCR Plan Agreement says nothing about benefitting registrants; it speaks only of coordinating the collection of registrations and fees among member states. *See generally* UCR Def.'s Exs. at 8–18 (UCR Agreement). Thus, just as in *Doe*, Plaintiffs and other similarly situated registrants are "not beneficiaries of this Compact; they are merely the subjects of it." *Doe*, 513 F.3d at 107. Plaintiffs are not third-party beneficiaries of the UCR Plan Agreement and therefore cannot sue to enforce it.[9]

### B.  Sunshine Act Claims

The court next turns to Plaintiffs' claim alleging violations of the Sunshine Act, 5 U.S.C. § 552b(e). As discussed earlier, the UCR Act provides that "[m]eetings of the board and any subcommittees or task forces appointed under paragraph (5) shall be subject to the provisions of" the Sunshine Act. 49 U.S.C. § 14504a(d)(4)(D). The UCR Plan Agreement is to the same effect. UCR Def.'s Exs. at 22. Plaintiffs assert that, as to its own meetings, the Board violated the Sunshine Act's requirements in multiple ways, discussed in greater detail below. *See* Pls.' Mot. for Summ. J., ECF No. 75; Pls. Mem. in Support of Summ. J., ECF No. 75-1 [hereinafter Pls.' Mem.], at 6–11. Moreover, they contend that Board subcommittee meetings historically have not complied with the Sunshine Act's requirements at all. *Id.* at 11–13. Plaintiffs ask the court to "[e]njoin the UCR Plan board from further violating the Sunshine Act." Compl. at 16 ¶ 4.[10]

---

[9] Plaintiffs also assert that they are third-party beneficiaries of the various Memorandums of Understanding between INDOR and the Board, which govern INDOR's administration of the UCR Plan Agreement. Pls.' Reply at 15–16. Because this argument relies on the premise that Plaintiffs are third-party beneficiaries of the UCR Plan Agreement, *see id.*, the court's holding to the contrary addresses this claim as well.

[10] Plaintiffs also ask the court to "invalid[ate] and set aside" Board actions taken at its September and October 2017 meetings, including "the change in the Opening Day for the 2018 UCR Renewal Period." *Id.* at 16 ¶ 2. But for the reasons already discussed, that requested relief is moot. The 2018 registration period has come and gone, such that setting aside the decision to delay its opening would supply provide no meaningful relief at this point. Moreover, to the extent Plaintiffs ask the court to set aside other Board actions taken at those meetings, the court declines to do so. Plaintiffs have not identified any other Board action they seek to invalidate and, even if they had, Plaintiffs have not

1. *Success on the Merits*

A plaintiff seeking a permanent injunction must show actual success on the merits, rather than a mere likelihood of success. *See Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). The court therefore begins with assessing the merits of Plaintiffs' claimed violations of the Sunshine Act.

a. Untimely public announcements

The Sunshine Act requires the Board to "make public announcement, at least one week before the meeting, of the time, place, and subject matter of the meeting, whether it is to be open or closed to the public, and the name and phone number of the official designated by the agency to respond to requests for information about the meeting." 5 U.S.C. § 552b(e)(1). Based on a survey conducted of 128 Board meetings, stretching back to 2006, Plaintiffs assert that the Board provided a "public announcement" for only 3% of its meetings. Pls.' Mem. at 6; *see also* Am. Compl., Ex. 13, ECF No. 35-2. The Board counters that it has substantially complied with the "public announcement" requirement. UCR Def.'s Mot at 9–12.

The Sunshine Act does not define what qualifies as a "public announcement." Nor does any statutory text or case law illuminate the requirement. The court therefore turns to legislative history. *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 279 (D.C. Cir. 2018) (stating that "legislative history may help discern the meaning of an otherwise ambiguous text"). A House report, addressing a different section of the Sunshine Act, provides guidance. Section 552b(d)(3) requires agencies to disclose, among other things, the results of a vote to close a meeting. As to that section, the House report states:

> This subsection *and others in the bill* require that certain information be made available to the public. . . . Means of publicizing such information should include

---

shown that this case presents the "rare" circumstance where a Sunshine Act violation warrants vacating agency action. *12 Percent I*, 282 F. Supp. 3d at 197–98.

posting notices on the agency's public notice boards, publishing them in publications whose readers may have an interest, and *sending them to the individuals on the agency's general mailing list or a mailing list maintained for those who desire to receive such material*.

H.R. Rep. No. 880 (part I), 94th Cong., 2d Sess. 14 (1976) (emphasis added) [hereinafter House Rpt.]. As this passage suggests, when it adopted the Sunshine Act, Congress contemplated that an agency could satisfy public notice requirements with a meeting notice that did not necessarily reach the public at large, but instead one that was targeted to a group of interested persons. A Federal Register notice, by contrast, would reach a wider audience.

Using this legislative history as a guide, the court finds that the Board has substantially complied with the Sunshine Act's "public announcement" requirement, at least with respect to disclosing the time and place of the meeting. The Board historically has provided a "public announcement" of its upcoming meetings by electronic mail "to a list comprised of those persons who have previously indicated a desire to be included in the UCR email list and who have provided their email address (which includes representatives of Plaintiffs)." UCR Def.'s Exs. at 3 ¶ 8. The e-mail notice includes a dial-in phone number for members of the public to participate in the meeting. *See id.* at 37. Such delivery comports with making a public announcement "by way of a mailing list maintained for those who desire to receive such material." Today, the Board provides public notice of its meetings through its new website. *See id.* ¶ 10. Thus, insofar as the "public announcement" mandate requires the Board to inform the public about the place and time of a meeting, the Board has substantially complied.

b.  Untimely Federal Register notices

Plaintiffs' second contention is that the Board has consistently failed to adhere to the Sunshine Act's Federal Register notice requirement. That assertion, however, rests on a fundamental misreading of the Act. Plaintiffs contend that the "plain language of the Sunshine

Act requires . . . publication of the announcement in the Federal Register at least seven days prior to the meeting." Pls.' Mem. at 5; *see also* Pls.' Reply at 3. But that is not what the Act says. Rather, it directs that, "[i]mmediately following each *public announcement*," the agency "shall also [submit] for publication in the Federal Register" the same information contained in the public announcement. 5 U.S.C. § 552b(e)(3) (emphasis added). Thus, the Sunshine Act distinguishes between a "public announcement," which is subject to a pre-meeting deadline of one week, and the Federal Register notice, which is not. An agency complies with the Federal Register notice requirement so long as it "immediately" submits the relevant information following the public announcement. *Id*.

Here, Plaintiffs fail to carry their burden of proving that the Board routinely has delayed making "immediate" submissions to the Federal Register. Indeed, the uncontested record shows otherwise. *See* UCR Def.'s Exs., 4 ¶ 10 (listing public announcement and Federal Register submission dates; in only two instances, November 2017 and December 2017, did the submission to the Federal Register follow a public announcement by more than a few days).[11] The court therefore finds in favor of the Board as to this aspect of Plaintiffs' Sunshine Act claim.[12]

### c. Notice of meetings' subject matter

Next, Plaintiffs take the Board to task for not providing adequate descriptions of the "subject matter" of upcoming meetings, as required by both the "public announcement" and

---

[11] In response to the Board's factual assertions about its notice practices, Plaintiffs consistently state that they "lack knowledge to respond." *See, e.g.,* Pls.' Reply; Pls.' Reply to UCR Def.'s Facts, ECF 97-2, ¶¶ 12, 13, 16, 17, 20, 21, 26, 31, 36, 41. The court offered Plaintiffs the opportunity to take discovery in this case, but they elected to proceed to summary judgment. Their "lack of knowledge" thus cannot serve as an excuse to deny a fact assertion made by the Board. The court therefore treats such facts as conceded.

[12] For the first time in their reply brief, Plaintiffs suggest that the Board intends to "obfuscate and conceal" by its current practice of posting on its website both a preliminary public notice and a final public notice of upcoming meetings, and only making the Federal Register submission after the latter. Pls.' Reply at 4. The court, however, infers no nefarious intent from the Board's public posting of an *additional* notice of its meetings.

Federal Register provisions of the Sunshine Act. 5 U.S.C. § 552b(e)(1), (3). Plaintiffs have shown that, for every one of its meetings, the Board submitted the same boilerplate to the Federal Register to describe the meeting's subject matter: "Matters to be Considered: The Unified Carrier Registration Plan Board of Directors (the Board) will continue its work in developing and implementing the Unified Carrier Registration Plan and Agreement and to that end, may consider matters properly before the Board." Pls.' Facts ¶ 32. The Board does not dispute this fact. *See* UCR Def.'s Facts ¶ 32 (providing no facts to the contrary).

Once more, the Sunshine Act and case law are silent as to what the "subject matter" disclosure must contain. But, again, legislative history is informative. The same House report discussed above states that "[t]he subject-matter identification required by this subsection must be *of a specific nature*, e.g., the docket names or titles and numbers, rather than a general statement as to the generic subjects to be discussed." House Rpt. at 15 (emphasis added). The Board's boilerplate notices clearly fail to satisfy the "specific nature" standard.

The Board contends that, through its newly initiated online notices, it discloses an agenda for upcoming meetings, thereby complying with the Act's subject-matter disclosure requirement. The agenda postings might satisfy the subject-matter notice required as a component of the mandated "public announcement." But the Board does not contest that its Federal Register notices continue to contain the same boilerplate text. True, the Federal Register notice now directs the reader to the Board's website for more information, but the Sunshine Act requires that the "specific nature" of the meeting be made available in the Federal Register itself. Identifying the URL of the Board's website is no substitute. The court therefore finds that Plaintiffs have succeeded in showing the inadequacy of the Board's subject-matter disclosures.

d.     <u>Notice regarding subcommittee meetings</u>

Finally, the court turns to Plaintiffs' contention that the Board's subcommittee meetings violate the Sunshine Act.  In its January 2018 decision on one of Plaintiffs' requests for injunctive relief, the court held that Plaintiffs "have shown they are likely to succeed on the merits" on this aspect of their claim.  *12 Percent VI*, 289 F. Supp. 3d at 79–81.  At that time, the court noted that, "[a]ccording to Plaintiffs' review of the public record . . . with perhaps one exception, the UCR Board has *never* complied with the Sunshine Act's public notice requirements with respect to subcommittee meetings."  *Id*. at 79–80.  Plaintiffs largely rely on the same factual record here.  *See* Pls.' Facts ¶¶ 30, 36, 37, 50, 51, 54, 56, 57 (relying on evidence previously submitted to the court).

In response to this evidence, the Board offers little rebuttal.  It asserts that "the process the Board uses to provide public notice of . . . subcommittee meetings has evolved and improved over time, most notably with the inception of the UCR Plan's website."  UCR Def.'s Facts at 8; UCR Def.'s Mot. at 2.  The Board, however, offers no facts to support this general assertion.  The declaration upon which the Board relies does not distinguish between Board and subcommittee meetings.  *See* UCR Def.'s Exs. at 4 ¶ 8.  Moreover, of the meeting announcements the Board has put in evidence, *id*., Exs. B–X, only one contains any mention of subcommittees, *see id*., Ex. V. Such evidence is not nearly enough to defeat the overwhelming evidence that the Board historically has not followed the Sunshine Act with respect to its subcommittee meetings.

The Board also relies on an earlier finding by the court that "Defendant's notices for the upcoming subcommittee meetings substantially complied with the court's order requiring it to adhere to the notice requirements of the Sunshine Act."  *12 Percent V*, 316 F. Supp. 3d at 25.  The court's finding there, however, was made in a different context.  Plaintiffs then had requested the extraordinary remedy of cancelling ten subcommittee meetings already scheduled and enjoining

any further meetings "without first complying with the notice requirements of the Sunshine Act." *Id*. at 24 n.1.  Plaintiffs faced a much greater burden there because they alleged civil contempt. *See id.* at 25 (holding that Plaintiffs "could not meet the stringent standard to show civil contempt").  In the present posture, however, Plaintiffs do not face the same steep evidentiary burden.  Accordingly, the court finds that the Board has not complied with its Sunshine Act obligations as to subcommittee meetings.

2.    *Permanent Injunction Equitable Factors*

Although Plaintiffs have succeeded on the merits as to certain aspects of their Sunshine Act claim, permanent injunctive relief is not available as a matter of right.  Plaintiffs still must demonstrate that: (1) they have suffered an irreparable injury (even though they wrongly assert otherwise, *see* Pl.'s Mem. at 10); (2) remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) the balance of hardships between the parties favors an equitable remedy; and (4) an injunction is not contrary to the public interest.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).  A permanent injunction is a "forward-looking" remedy, *Gratz v. Bollinger*, 539 U.S. 244, 284 (2003) (Stevens, J., dissenting), therefore the court must consider whether such relief is "now needed to guard against any present or imminent risk of likely irreparable harm," *Monsanto*, 561 U.S. at 162.  Applying these equitable factors, the court finds that a limited permanent injunction is warranted against the Board.

a.    <u>Irreparable harm</u>

The court previously held that Plaintiffs were irreparably harmed by the Board's total failure to conform its subcommittee meetings to the Sunshine Act's notice requirements.  *See 12 Percent VI*, 289 F. Supp. 3d at 80.  In other opinions, however, the court held that Plaintiffs had not established irreparable harm from the Board's use of boilerplate notices *as to particular*

*meetings* and thus declined to award Plaintiffs injunctive relief. *See 12 Percent II*, 280 F. Supp. 3d at 122; *12 Percent IV*, 289 F. Supp. 3d at 78. The court found that "Plaintiffs [had] offered no actual proof that the absence of specifics has adversely impacted their participation in past meetings or is likely to have such effect in the future," and held that the Board's new practice of posting the agendas to its website ameliorated any injury. *12 Percent IV*, 289 F. Supp. 3d at 79.

The question the court now confronts is whether the Board's past non-compliance creates a "present or imminent risk of likely irreparable harm." *Monsanto*, 561 U.S. at 162. The Board says "no," arguing that there is no longer a risk of future Sunshine Act violations, because it now posts public notices of upcoming meetings and meeting agendas on its website. *See* UCR Def.'s Mem. at 9–12. The website postings, the Board insists, ensure that Plaintiffs and the public will receive all notices required under the Sunshine Act in a timely manner. Regrettably, the website is not a cure-all for the Board's Sunshine Act failures. The record shows that the Board's Federal Register notices remain deficient with respect to the "specific nature" of the subject matter of meetings. For instance, with respect to its August 23, 2018, meeting at which the Board amended the UCR Plan Agreement, the Federal Register notice contained the same boilerplate the Board has used as a matter of course. *See* Pls.' Reply to Gutierrez Decl., Ex. 2, ECF No. 103-2. The Federal Register notice for that meeting did direct the reader to the Board's website for an upcoming agenda, but as previously stated, a referenced hyperlink does not satisfy the Sunshine Act's requirement that the actual subject matter of the meeting be submitted for publication. Moreover, even if a reader managed to find her way to the online agenda, it supplied no information as to how the Board intended to amend the UCR Plan Agreement. *See id.*, Ex. 3, ECF No. 103-3. The Proposed Agenda simply states that the Chair would "[r]eview proposed amendments to the UCR Agreement," *id.*, offering no clue as to how the Board contemplated doing

so, let alone specifying the nature of the anticipated amendments. Importantly, these Plaintiffs have shown that *they* were harmed by this deficient Federal Register notice. *See id.*, Ex. 1, Third Decl. of Amanda Narog, ECF No. 103-1. The court therefore concludes that the Board's Sunshine Act violations pose "a present or imminent risk of likely irreparable harm." *Monsanto*, 561 U.S. at 162.

### b. Other remedies

No other remedy is adequate to compensate Plaintiffs for the harm suffered. The lost opportunity to meaningfully participate in public meetings is precisely the kind of injury that demands an equitable remedy.

### c. Balance of hardships and the public interests

The balance of hardships favors Plaintiffs. The Board does not contend—nor could it reasonably do so—that an order enjoining it from violating a public disclosure law it is legally obligated to follow would present a hardship.

### d. Public interest

Finally, the public interest plainly favors injunctive relief. "Forcing federal agencies to comply with the law is undoubtedly in the public interest[.]" *Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015). Additionally, "[t]he public interest is, no doubt, served by a transparent government." *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 92 (D.D.C. 2007).

*       *       *

The court therefore grants, in part, Plaintiffs' request for permanent injunctive relief.

## V.    CONCLUSION

For the foregoing reasons, the court denies Plaintiffs' motion for summary judgment as to Defendant INDOR and grants Defendant INDOR's motion for summary judgment.   Furthermore, the court grants in part and denies in part Plaintiffs' Motion for Summary Judgment against Defendant UCR Plan Board and grants in part and denies in part Defendant UCR Plan Board's Motion for Summary Judgment.

Moreover, for the reasons set forth in the opinion, for a period to expire on February 4, 2020, unless further extended for good cause, Defendant UCR Plan Board is hereby enjoined from violating the Sunshine Act insofar as it requires that the pre-meeting "public announcement" and the Federal Register notice include a description of the "subject matter of the meeting." Additionally, the Board is hereby enjoined from violating the Sunshine Act's "public announcement" and Federal Register disclosure requirements as to its subcommittee meetings.

Dated:  February 4, 2019

Amit P. Mehta
United States District Judge