# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                              |   |                              |
|----------------------------------------------|---|------------------------------|
| 12 PERCENT LOGISTICS, INC., et al.,          | ) |                              |
| Plaintiffs,                                  | ) |                              |
| v.                                           | ) | Case No. 17-cv-02000 (APM)   |
| UNIFIED CARRIER REGISTRATION PLAN BOARD, et al. | ) |                          |
| Defendants.                                  | ) |                              |

## MEMORANDUM OPINION AND ORDER

Plaintiffs 12 Percent Logistics, Inc. and the Small Business in Transportation Coalition are once more before this court, this time seeking attorney's fees and costs against Defendant Unified Carrier Registration Plan Board ("Board" or "UCR Board"). Plaintiffs brought this action against the Board and a second defendant, the Indiana Department of Revenue ("INDOR"), on two grounds. First, Plaintiffs claimed that the Board had violated the Sunshine Act by failing to publicly and timely notice its meetings and subcommittee meetings. Second, Plaintiffs asserted that the Board and INDOR had violated the Unified Carrier Registration Plan Agreement ("UCR Plan Agreement")[1] by delaying the start of registration for the 2017 calendar year. Plaintiffs now seek an award of $337,865.43—consisting of $261,316.53 in attorney's fees and $6,281.46 in costs and expenses—because they were successful as to some of their claims. For the reasons that follow, the court concludes that, although Plaintiffs are entitled to attorney's fees, they have not

---

[1] The UCR Plan Agreement is an interstate compact that governs the "collection and distribution of registration and financial responsibility information provided and fees paid by motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies." 49 U.S. Code § 14504a(a)(8).

supplied sufficient evidence to support their specific fee request. Plaintiffs' motion is therefore granted in part and denied in part. The court will afford Plaintiffs one more opportunity to submit the required proof to support their demand for fees and costs.

I.

The court chronicled the long, often tortured, history of this case in its Memorandum Opinion resolving the parties' motions for summary judgment. *See* Mem. Op. on Summ. J., ECF No. 109 [hereinafter Mem. Op.]. The court briefly summarizes that history here insofar as it is relevant to resolving Plaintiffs' fee petition.

On September 27, 2017, Plaintiffs filed their Complaint, Compl., ECF No. 1, along with their first motion for temporary restraining order and preliminary injunction, Pls.' Mot. for TRO & Prelim. Inj., ECF No. 2. In their motion, Plaintiffs asserted that the UCR Board had violated the Sunshine Act by failing to give adequate notice of its September 14, 2017 meeting, at which the Board had decided to postpone the start of the annual period for interstate carrier registrations to an unspecified date after October 1, 2017. As a remedy for the alleged Sunshine Act violation, Plaintiffs asked the court to undo the Board's action. *See* Pls.' Mot for TRO & Prelim. Inj., Mem. in Supp., ECF No. 2-1, at 1–2. The court denied Plaintiffs' motion for injunctive relief on the grounds that: (1) the Sunshine Act did not authorize invalidating the agency's action; and (2) Plaintiffs had failed to demonstrate irreparable harm. *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 282 F. Supp. 3d 190, 198, 202 (D.D.C. 2017). The court also declined to enjoin the Board from future Sunshine Act violations because Plaintiffs had identified only one such violation. *Id.* at 199. As a limited remedy, however, as permitted under the Sunshine Act, the court ordered the UCR Board to immediately disclose its draft minutes and any recordings of the insufficiently noticed September 14th meeting. *Id.* at 202–03.

Plaintiffs then filed an Amended Complaint and, on November 17, 2017, sought injunctive relief for a second time. *See* First Am. Verified Compl., ECF No. 35; Pls.' Second Mot. for Prelim. Inj., ECF No. 36. In this iteration, Plaintiffs offered evidence that the Board historically had failed to publish timely notices of full Board meetings in the Federal Register and had consistently used boilerplate language to describe the subject matter of upcoming Board meetings. *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118, 123–24 (D.D.C. 2017) [hereinafter *12 Percent II*]. The court nevertheless denied injunctive relief on the ground that Plaintiffs had failed to show irreparable harm. *Id.*

On December 12, 2017, Plaintiffs made yet a third attempt at securing injunctive relief. *See* Pls.' Third Mot. for TRO & Prelim. Inj., ECF No. 46, Mem. in Support, ECF No. 46-1. Plaintiffs argued that the UCR Board had not adhered to the Sunshine Act's notice requirements with respect to upcoming Board and subcommittee meetings scheduled for December 14, 2017. *See id.* at 2–3. Plaintiffs also presented evidence that the Board historically had not publicly noticed subcommittee meetings. *See id.* at 7. On December 13, 2017, the court rejected Plaintiffs' demand for injunctive relief yet again, finding that Plaintiffs once more had not established irreparable harm, as they had notice of the upcoming meetings and were able to fully participate in them. Order, ECF No. 47, at 1.

Plaintiffs then noticed an appeal from the court's second and third denials for injunctive relief, *see* Notice of Appeal, ECF No. 48, and sought an injunction pending appeal, *see* Pls.' Second Mot. for Inj. Pending Appeal, ECF No. 53. Plaintiffs' fourth attempt at an injunction was, in part, a charm. In support of their motion, Plaintiffs presented uncontested evidence that in the past the Board had noticed only one subcommittee meeting in accordance with the Sunshine Act. *Id.* at 9. The court found that the Board was likely to continue holding subcommittee meetings

3

without providing the legally required notice to the public and entered a limited injunction requiring the Board, during the pendency of appeal, to comply with the Sunshine Act's notice requirements before it convened a subcommittee meeting. *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 289 F. Supp. 3d 73, 75–76 (D.D.C. 2018) [hereinafter *12 Percent III*]. The court denied, however, Plaintiffs' request for an injunction pending appeal as to the Board's full meetings, as Plaintiffs failed to establish irreparable harm as to those alleged Sunshine Act violations. *Id*. at 76.

Thereafter, Plaintiffs withdrew their appeal and asked to move forward with summary judgment. *See* Pls.' Mot. to Lift Stay on Summ. J. Briefing Pending Mediation, ECF No. 80. Plaintiffs then filed an emergency motion asking the court to cancel the Board's ten subcommittee meetings scheduled for June and July 2018 and to hold the Board in contempt for allegedly violating the court's injunction. *See* Emergency Mot. to Enforce January 29, 2018 Order and Hold Def. in Contempt of Court, ECF No. 84. The court denied Plaintiffs' motion on procedural and substantive grounds. *12 Percent Logistics Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 25 (D.D.C. 2018).

Each side then moved for summary judgment. The court held that the Board had violated the Sunshine Act in two ways—by providing the public with only boilerplate descriptions of the subject matter of its meetings, and by failing to provide timely notice of subcommittee meetings. Mem. Op. at 2. The court entered judgment in favor of the Board, however, as to other alleged violations of the Sunshine Act, and in favor of the Board and INDOR with respect to the claim that they violated the UCR Plan Agreement by delaying the start of the 2017 registration period. *Id.* As relief, the court entered a permanent injunction, to terminate in one year, that "enjoined [the Board] from violating the Sunshine Act insofar as it requires that the pre-meeting 'public

4

announcement' and the Federal Register notice include a description of the 'subject matter of the meeting[,]' [and] . . . from violating the Sunshine Act's 'public announcement' and Federal Register disclosure requirements as to its subcommittee meetings." *Id.* at 28.

The present motion for an award of attorney's fees and costs followed. *See* Pls.' Mot for Att'ys Fees, ECF No. 116, Mem. in Supp. of Pls.' Mot. for Att'ys Fees, ECF No. 116-1 [hereinafter Pls.' Mot.]

II.

The Sunshine Act provides that courts "may assess against any party reasonable attorney fees and other litigation costs reasonably incurred by any other party who substantially prevails in any action" brought under the Act. 5 U.S.C. § 552b(i). The parties have not identified any case that addresses the Sunshine Act's attorney's fees provision, *see* Pls.' Mot. at 3; Def.'s Opp'n to Pls.' Appl. & Mot. for Att'ys Fees, Costs, & Expenses, ECF No. 123 [hereinafter Def.'s Opp'n], at 4, and the court has not found one either. Absent guiding authority, Plaintiffs rely on the standard for fee awards under the Freedom of Information Act ("FOIA"). Pls.' Mot. at 3. The Board does the same. Def.'s Opp'n at 5–7. Like the Sunshine Act, FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" where "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). In view of the close relationship between FOIA and the Sunshine Act, *see Common Cause v. Nuclear Reg. Comm'n*, 674 F.2d 921, 929 (D.C. Cir. 1982), and the parties' agreement to proceed under the FOIA attorney's fees framework, the court follows that approach.

To recover attorney's fees and costs under FOIA, the plaintiff must show he is both eligible for and entitled to an award. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–

5

69 (D.C. Cir. 2006)). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Id*. (quoting *Judicial Watch*, 470 F.3d at 368). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id*. "Finally, '[a] plaintiff who has proven both eligibility for and entitlement to fees must submit [its] fee bill to the court for [ ] scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.'" *Judicial Watch*, 470 F.3d at 369 (quoting *Long v. IRS*, 932 F.2d 1309, 1313–14 (9th Cir. 1991)).

A.

The court begins with Plaintiffs' eligibility for attorney's fees. Under FOIA, a plaintiff has "substantially prevailed" and is therefore "eligible" for attorney's fees if he has "obtained relief through . . . a judicial order . . . or consent decree." 5 U.S.C. § 552(a)(4)(E)(ii)(I). Here, the court granted some of the relief sought by Plaintiffs. The court found that the Board had "violated the Sunshine Act by making public only boilerplate descriptions of the subject matter of all meetings and by failing to provide timely notice of subcommittee meetings." Mem. Op. at 2. As relief, the court entered a permanent injunction requiring the Board to publish pre-meeting public announcements that included a description of the subject matter of its meetings and to follow Federal Register disclosure requirements as to its subcommittee meetings. *Id.* at 28. Thus, under the plain terms of the statute, Plaintiffs have "substantially prevailed" and are eligible for attorney's fees. *See Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 194 (D.C. Cir. 2007) (stating that "a favorable order does not make a plaintiff a prevailing party unless the order constitutes judicial relief on the merits resulting in a 'court-ordered change in the legal relationship between the plaintiff and the defendant'") (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (cleaned up).

The Board does not contend otherwise. *See* Def.'s Opp'n at 4 (assuming "*arguendo* that Plaintiffs can show they are eligible for some award of fees and expenses, by having obtained some relief in the case").

B.

The next question is whether Plaintiffs are entitled to attorney's fees. In the FOIA context, that inquiry requires weighing four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Judicial Watch*, 522 F.3d at 371 (quoting *Tax Analysts v. U.S. Dep't of State*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). No individual factor is dispositive, and the court weighs the factors as a matter of discretion. *See Tax Analysts*, 965 F.2d at 1094. The third and fourth factors do not apply squarely to a Sunshine Act fees dispute, but they can be modified to inquire about (3) the plaintiff's interest in the Sunshine Act's open meeting requirements and (4) the reasonableness of the agency's noncompliance. The Board disputes only the first and fourth factors, so the court does not address the second and third factors and assumes that they weigh in favor of a fees award.

The first factor—the public benefit derived from this case—requires the court to consider both "the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). Citing this court's prior opinion regarding Plaintiffs' motion for an injunction pending appeal, the Board argues that Plaintiffs have offered no evidence that "any member of the public has been injured or negatively impacted" by the Board's Sunshine Act violations. Def.'s Opp'n at 6 (citing *12 Percent III*, 289 F. Supp. 3d at 79). But the Board takes that quote out of context. *See 12 Percent III*, 289 F. Supp. 3d at 79 ("Plaintiffs have offered no actual *proof* that the absence of specifics [in the Board's

7

announcements] has adversely impacted their participation in past meetings or is likely to have such effect in the future."). That portion of the opinion concerned whether Plaintiffs had cleared the high bar for demonstrating irreparable harm warranting an injunction. *Id.* ("[T]hat argument likewise falls short on the question of harm."). Here, in the fee-award context, the question is a different one. As Plaintiffs point out, the animating purpose behind the Sunshine Act is the recognition "that the public is entitled to the fullest practicable information regarding the decisionmaking processes of the Federal Government." Pls.' Mot. at 5 (quoting The Sunshine Act, Pub. L. 94-409, § 2, 90 Stat. 1241 (1976)); *see also Common Cause*, 674 F.2d at 928 ("Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view."). Thus, the court asks whether Plaintiffs' success contributed to the ability of citizens to participate in the Board's activities and public functions. *Cf. Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (stating that, in the FOIA context, the public-benefit prong asks whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices") (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). As a result of the relief obtained by Plaintiffs, interested persons are now provided greater detail in advance about the subjects to be addressed at the Board's meetings and subcommittee meetings, enabling them to be better prepared to participate in the Board's decisionmaking process. This achievement satisfies the public-benefit inquiry.

The fourth factor—whether the agency had a reasonable basis in law for failing to adhere to the Sunshine Act—also favors Plaintiffs. *See Tax Analysts*, 965 F.2d at 1096–97. The Board argues that it has "always attempted to comply with the Sunshine Act (even if in certain particulars it did not succeed)." Def.'s Opp'n at 6. It points out that it "initiated online notices containing an agenda for upcoming meetings," and, in Federal Register notices, directed readers to the Board's

website where it provided meeting agendas. *Id.* But the Board's position is unpersuasive for two reasons. For one, the compliance measures the Board identifies came *after* Plaintiffs filed this litigation. The Board deserves credit for taking those steps, but those measures also highlight the Board's pre-litigation compliance failures. Second, the Board supplies no explanation for its pre-litigation violations, namely, its near complete failure to provide the required notices for subcommittee meetings, *see 12 Percent III*, 289 F. Supp. 3d at 79–80 (observing that, "with perhaps one exception, the UCR Board has *never* complied with the Sunshine Act's public notice requirements"), and its practice of publishing boilerplate notices in the Federal Register, *see* Mem. Op. at 11. Indeed, as to noticing subcommittee meetings, the Board offers no defense (nor could it) for its former Chairman's view that the Sunshine Act does not apply to subcommittee meetings. *See 12 Percent III*, 289 F. Supp. 3d at 81 (finding that the Chairman's position to be "plainly contrary to law"). Accordingly, the fourth factor weighs in favor of entitlement to attorney's fees.

Because the balance of factors favors Plaintiffs, the court finds that Plaintiffs are entitled to an attorney's fees award.

IV.

Having established that Plaintiffs are both eligible for and entitled to attorney's fees, the court turns to the question whether the requested award is reasonable. *See* 5 U.S.C. § 552b(i) (providing for "reasonable attorney fees and other litigation costs"). Plaintiffs seek $331,583.97 in attorney's fees, consisting of $261,316.53 in fees related to the underlying litigation and $70,267.44 in fees for the "fees-on-fees" litigation. *See* Pls.' Mot. at 24; Pls.' Suppl. App. & Mot. for Att'ys Fees, Costs, & Expenses, ECF No. 129 [hereinafter Pls.' Suppl. Mot.], at 2–3. Plaintiffs also seek $6,281.46 in costs. Pls.' Mot. at 21. In support of their petition, Plaintiffs submit the declaration of James Bopp, Jr., their lead attorney. Pls.' Mot., Decl. of James Bopp., Jr., ECF No.

116-2 [hereinafter Bopp Decl.], at 1. Bopp states that the requested award is discounted (1) for lack of success, *id.* ¶¶ 13, 15–16, and (2) by a 9% reduction in hours in an exercise of "billing judgment," *id.* ¶ 14; *see also* Pls.' Mot. at 20 & n.7. Plaintiffs also submit their counsel's billing records for the underlying Sunshine Act litigation that reflects the work of four attorneys, who expended a gross total of 1060.30 hours, adjusted down to 965.80 hours. *See* Bopp Decl., Ex. 3, ECF No. 116-5 [hereinafter Fee Chart], at 136. With regard to hourly rates, Plaintiffs rely on the rates set forth in the Legal Services Index-adjusted *Laffey* Matrix ("LSI *Laffey* Matrix"), a fee schedule for complex federal litigation based on attorney experience level. Bopp Decl. ¶ 12; *see generally* Fee Chart; *see also* Pls.' Mot., Ex. B, ECF No. 116-9 (attaching LSI *Laffey* Matrix).[2] Bopp asserts that "the rates requested for [his] firm's work are the prevailing market rates for similar work by attorneys in Washington, D.C.," and that "these rates are based on the LSI *Laffey* Matrix." Bopp Decl. ¶ 12. Plaintiffs also include counsel's billing records for their "fees on fees" litigation, which also uses the LSI *Laffey* Matrix rates. Bopp Decl., Ex. 5, ECF No. 116-7 (hereinafter Fees on Fees Chart).

The usual method for determining a reasonable award is to calculate the "lodestar," which is found by multiplying "the hours reasonably expended in the litigation by a reasonable hourly fee." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The moving party bears the burden of showing the reasonableness of its request. *Role Models*

---

[2] A fee matrix is "a chart averaging rates for attorneys at different experience levels. For decades, courts in this circuit have relied on some version of what is known as the *Laffey* matrix." *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019). The original *Laffey* matrix, which was created in the 1980s, relied upon "a relatively small sample of rates charged by sophisticated federal-court practitioners in the District of Columbia." *Id.* Since then, the matrix has been updated periodically to reflect inflation, resulting in two competing *Laffey* matrices: the Legal Services Index ("LSI") Matrix and the United States Attorney's Office ("USAO") Matrix. *Id.* at 589. The rates included in the LSI Matrix are the higher of the two. *See id.* at 590–91. While the LSI Matrix is designed to reflect the hourly rates charged by federal court practitioners who litigate complex cases in Washington, D.C., the USAO Matrix has been based, since 2015, on "data for all types of lawyers—not just those who litigate complex federal cases—from the entire metropolitan area." *Id.* at 587.

*Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). That includes demonstrating the reasonableness of the hourly rate and the reasonableness of the number of hours expended. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995). Once the plaintiff has met this burden, the burden shifts to the defendant to rebut the presumption of reasonableness with "equally specific countervailing evidence." *Id.* at 1109 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)). Courts have broad discretion in determining an appropriate fee award and may modify the request based on the reasonableness of the requested amount and the facts of the case. *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016) (citing *Judicial Watch*, 470 F.3d at 369); *see also Fenster*, 617 F.2d at 742 (recognizing a court's considerable discretion in awarding attorney's fees and costs).

### A. The Reasonableness of the Hourly Rate

To show the reasonableness of the hourly rate, a plaintiff must submit evidence related to: (1) "the attorneys' billing practices"; (2) "the attorneys' skill, experience, and reputation"; and (3) "the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Plaintiffs' fee petition founders on the first and third prongs.

As to the first criterion—counsel's billing practices—Plaintiffs have produced no proof whatsoever. Although the Bopp Declaration sets forth some background as to counsel's law practice, *see* Bopp Decl. ¶¶ 3–4, 6, nowhere does it describe counsel's usual approach to billing clients. For example, Bopp does not disclose whether he has hourly-paying clients and what rates he charges those clients, or whether he takes on only contingency fee or fee-shifting work, or a mix of such cases. *See generally id.* As a result, the court cannot determine whether the requested LSI *Laffey* Matrix rates are in line with counsel's usual rates and, if they are not, whether awarding those rates would represent a windfall. *See Covington*, 57 F.3d at 1108 (observing that "[i]mplicit

11

in [the] line of inquiry [regarding billing practices] is the assumption that the law was not written to subsidize attorneys who charge below-market rates because they cannot command anything more").

Plaintiffs also fall well short of carrying their burden with respect to the third criterion—the "prevailing market rates in the relevant community." *See Covington*, 57 F.3d at 1107. A plaintiff seeking fees can establish the prevailing market rate in one of two related ways. First, the fee applicant can demonstrate that the litigation in question "fall[s] within the bounds" of "'complex federal litigation'" and, therefore, the *Laffey* Matrix rates presumptively apply. *See Reed v. District of Columbia*, 843 F.3d 517, 521 (D.C. Cir. 2016). This approach requires more than a conclusory declaration by counsel but an actual explanation of why the case deserves the label "complex." *See id.* at 525 ("Mere conclusory statements that [ ] litigation is 'as complex' as other types of cases deemed . . . to be 'complex federal litigation,' absent an explanation of *why* this is so, cannot suffice to meet [the applicant's] burden."). Second, the applicant can provide "evidence of the fees charged, and received," by litigators in cases brought under the fee-shifting statute in question. *See id.* at 521. Though litigators taking this second approach may still argue that their rates are equivalent to *Laffey* Matrix rates, this second approach to establishing the prevailing market rate is "not conceptually linked to the *Laffey* Matrix." *Id.*

In this case, Plaintiffs take the first approach. They argue this case rises to the level of "complex federal litigation" justifying the use of the LSI *Laffey* Matrix, because the case required "much more than simply coordinating with opposing counsel and monitoring production of requested documents." Pls.' Mot. at 18. Plaintiffs point out that they filed three motions for temporary restraining orders and preliminary injunctions, and fully briefed cross-motions for summary judgment, which required analysis of "relatively uncharted issues under [t]he Sunshine

12

Act." *Id.* But Plaintiffs' decision to file a bevy of motions—most ending unsuccessfully—cannot, without more, qualify this case as "complex federal litigation," especially where the case required no discovery nor any specialized non-legal knowledge. *See* Joint Scheduling Report, ECF No. 73, at 2) (stating that the "parties agree that discovery is unnecessary"); *cf. Reed*, 843 F.3d at 525 (observing that "the absence of discovery may suggest that [Individuals with Disabilities Education Act] cases are not as complex as cases in which discovery is extensive," and rejecting "specialized non-legal knowledge" as sufficient to establish "complexity"). And, although this case involved some novel issues of law, that novelty resulted from the dearth of actual litigation under the Sunshine Act, not from the difficulty of the issues presented. In short, Plaintiffs' "proof" of complexity amounts to little more than a "mere conclusory statement[ ]" that this case is "as complex" as cases deemed to be "complex federal litigation." *Id.* Plaintiffs thus fall short of carrying their burden.

Had Plaintiffs opted for the second approach—through "evidence of the fees charged, and received"—they would have fared no better. The court makes this observation for Plaintiffs' benefit as they consider the kind of evidence they might submit in the future. The only actual proof of prevailing rates that Plaintiffs submitted is the LSI *Laffey* Matrix itself. *See* Bopp Decl. ¶ 12 ("The rates requested for my firm's work are the prevailing rates for similar work by attorneys in Washington, D.C. . . . . These rates are based on the LSI *Laffey* Matrix."). A fee matrix alone, however, cannot establish the reasonableness of the rate sought. Fee matrices generally are "one type of evidence that 'provide[s] a useful starting point' in calculating the prevailing market rate." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Covington*, 57 F.3d at 1109). But because the D.C. Circuit deems fee matrices to be "somewhat crude," fee applicants must "supplement[ ] fee matrices with other evidence such as 'surveys to update the[m]; affidavits

13

reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases.'" *Id.* at 101 (quoting *Covington*, 57 F.3d at 1109); *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326 ("[W]hen the attorney states his belief as to the relevant market rate, he should be able to state . . . that it was formed on the basis of several specific rates he knows are charged by other attorneys."). Thus, merely referencing the LSI *Laffey* Matrix rates, as Plaintiffs have, will not do.

In summary, the court finds that Plaintiffs have not satisfied their burden to demonstrate the reasonableness of the requested billing rates. The court will afford Plaintiffs an opportunity to submit additional evidence to satisfy their burden.

### B. The Reasonableness of the Hours Expended

Plaintiffs' showing as to the number of hours expended during this litigation is also deficient. To show the reasonableness of the number of hours spent, an applicant must submit "sufficiently detailed information about the hours logged and the work done . . . to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. "Fees are not recoverable for nonproductive time[,] nor . . . time expended on issues on which [the] plaintiff did not ultimately prevail." *Id*. The court must consider "the relationship between the amount of the fee [requested] and the results obtained." *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 76 (D.D.C. 2013); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

Plaintiffs' Fee Chart contains over 130 pages of individual billing entries, a number of which correspond to work that is not compensable because Plaintiffs were ultimately unsuccessful on those claims. *See generally* Fee Chart. As one example, Plaintiffs' Fee Chart reduces the amount awarded for work related to its second request for a temporary restraining order and preliminary injunction by 70%, despite the fact that Plaintiffs were entirely unsuccessful on this motion. *See id.* at 37; *see also 12 Percent II*, 280 F. Supp. 3d at 124–25 (denying Plaintiffs' Second Motion for Temporary Restraining Order and Preliminary Injunction). Inclusion of such fees is improper. *See George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1537 (D.C. Cir. 1992) (holding that a court must "prevent [a] claimant from 'piggybacking' fees incurred for work done on losing claims onto unrelated winnings ones").

The court will not parse through Plaintiffs' billing records to ascertain which entries relate to which partially successful claims. "[H]ad judges desired to don green eyeshades instead of robes, they would not have gone to law school. Indeed, the judicial role is not to comb through endless lists of billing entries to gather data the parties have not seen fit to make clear." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.,* 82 F. Supp. 3d 396, 414 (D.D.C. 2015). Plaintiffs shall therefore submit an amended declaration that seeks fees as to work done on only the following partially successful tasks:

(1) Plaintiffs' Complaint and Amended Complaint, ECF Nos. 1, 35;

(2) Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2;

(3) Plaintiffs' Second Motion for Preliminary Injunction Pending Appeal, ECF No. 53, and

(4) Plaintiffs' Motion for Summary Judgment, ECF No. 75.

Plaintiffs shall segregate, or otherwise identify, the time entries devoted to the foregoing tasks, to

reflect both the billing attorney and the proposed rate. Plaintiffs also shall include proposed aggregate fee totals for tasks associated with their successful claims and efforts. The court will discount the fee award as to each task based on the degree of success achieved.

**C.     Fees on Fees**

As Plaintiffs have not met their burden with respect to the reasonableness of the requested fee award, the court defers ruling on their demand for "fees on fees." *See* Pls.' Suppl. Mot. at 3 (requesting $10,893.40 for "fees on fees" related to Plaintiffs' reply).

IV.

For the foregoing reasons, the court grants Plaintiffs' Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Sunshine Act, ECF No. 116, to the extent that the court finds Plaintiffs are entitled to an award of attorney's fees and costs. The court defers, however, fixing a final award amount pending further submissions by Plaintiffs supporting the reasonableness of their counsel's requested billing rates and the reasonableness of their claimed hours worked. The court denies, without prejudice, Plaintiffs' Supplemental Application and Motion for Attorneys' Fees, Costs, and Expenses Under the Sunshine Act, ECF No. 129.

Plaintiffs shall file any supplemental evidence to support their fee award on or before April 23, 2020.

Dated: March 23, 2020

Amit P. Mehta
United States District Judge